UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:11-CR-04 |
| | ) | |
| MARK EDWARD SALYER | ) | |

**REPORT AND RECOMMENDATION**

Defendant Mark Edward Salyer is charged in a Superseding Indictment with 2 counts of wire fraud and 103 counts of money laundering. Mr. Salyer was employed by MetLife Securities, Inc. as an account manager responsible for investment strategies of numerous IRA and brokerage accounts for clients in Kingsport, Tennessee. The United States generally alleges that Mr. Salyer forged the signatures of his clients, and appropriated their funds to his personal use.

Defendant made a sworn statement to Special Agent Douglas Allen of the United States Secret Service and Special Agent Brown of the Internal Revenue Service on October 22, 2007, and then an additional statement to Agent Brown on October 24, 2007. He has filed a motion to suppress those statements. (Doc. 24). The motion has been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on August 17, 2011. Only two witnesses testified at the hearing, Special Agent Allen, and defendant.

In his motion to suppress, defendant claims that his statements were not knowing and voluntary because he was under the influence of pain medication, Lortab, at the time he gave his statements.

Some time prior to October 22, 2007, defendant knew that his embezzlement of his clients' funds had been discovered by Metropolitan Life. He had been interviewed by Mr. Robert Hill, an investigator for Metropolitan Life.[1] Mr. Hill suggested to defendant that he call Detective Frank Light of the Kingsport Police Department, which defendant did. Detective Light basically told defendant that the Kingsport Police Department had nothing to do with the situation, and that he should contact Special Agent Douglas Allen of the United States Secret Service.

On Thursday, October 18, 2007, defendant telephoned Special Agent Allen and asked if he could meet with him. Allen already had talked to Investigator Hill, and generally was aware of what defendant had told Hill. Allen agreed to meet with defendant, but in the course of the phone conversation, defendant mentioned that he had a long-scheduled surgery for the next day, October 19, 2007. Special Agent Allen told defendant to proceed with his surgery and they could talk the following week.

Defendant's surgical procedure was a vasectomy, an out-patient procedure. He was proscribed Lortab for pain.

The following Monday, October 22, 2007, defendant drove from his home in

---

[1] Defendant gave a statement to Mr. Hill which was substantially the same as the statement he gave to Special Agent Allen on October 22.

2

Kingsport, Tennessee, to Special Agent Allen's Office at the United States Courthouse in Greeneville. Upon arriving in Allen's office, Allen read a *Miranda* warning to defendant, and then handed the written form to defendant to read for himself. Defendant signed the document, acknowledging that he understood his right to remain silent; his right to an attorney; and the possible ramifications of any statements he might make. It is appropriate to note at this juncture that defendant is an intelligent man, and highly-educated; he holds both Bachelors and Masters degrees.

In the course of his October 22 statement, defendant essentially confessed to stealing his clients' funds to advance his personal business ventures.

Two days later, defendant again contacted Allen, stating that he wished to correct a few things he said in his previous statement. Once again he traveled to the courthouse in Greeneville and he gave yet another statement, this time to Agent Brown of the Internal Revenue Service. The differences between the two statements are of no real significance.

Defendant testified that when he arrived at the courthouse on October 22, he already had taken a pain pill and, because he was still in pain, he took yet another. He further testified that he recalls nothing much about his trip to the courthouse, and his ensuing interview with the federal agents, beyond the screening that occurred at the courthouse security desk.[2]

Similarly, defendant testified that he was still taking his pain medications on October

---

[2] Although he professes to remember nothing about his trip to Special Agent Allen's office or a statement, he is able to recall that he did not feel free to leave.

3

24, and remembers little or nothing about his visit with Agent Brown that day, or his statement.

Although it is completely irrelevant to the pretrial inquiry regarding the voluntariness of his statements, this court finds that Mr. Salyer's testimony that he recalls little or nothing about his visits to the courthouse, or his statements of October 22 and 24, 2007, completely incredible. He did not tell the truth, and he is not believed. Nevertheless, the court will *assume,* solely for the purpose of the following discussion, that defendant was under the influence of pain medication on both October 22 and 24, 2007, and that his mental functioning was adversely affected as a result.

Defendant was never in custody, at any time. Although Special Agent Allen was not obligated to administer the *Miranda* warning,[3] he did so anyway. Nothing about defendant's demeanor, speech, or actions in any way suggested to Special Agent Allen that defendant was "under the influence;" defendant looked normal in all respects. Not only did he look normal, defendant was normal in actuality; as already noted, this court does not believe his testimony that he remembers nothing about his visits with the law enforcement agents or the statements he gave them.

The only issue is whether defendant's statement on October 22, 2007, and his statement on October 27, 2007 were voluntary and knowing, notwithstanding he had ingested pain medication.

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

4

The Fifth Amendment to the Constitution protects a person's right to be free from involuntary self-incrimination, as does 18 U.S.C. § 3501(a). The United States has the burden of proving the voluntariness of a confession by a preponderance of the evidence, *Lego v. Twomey*, 404 U.S. 474, 482-84 (1972). In determining whether or not a defendant's statement was voluntary, the trial court must look to the "totality of the circumstances" to ascertain if the statement was the product of the defendant's free and unconstrained choice. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). However, proof of antecedent coercive police conduct is a condition precedent to any inquiry regarding the voluntariness, or involuntariness, of a defendant's confession. *Colorado v. Connelly*, 479 U.S. 157 (1986).

Claims of mental deficiency, or mental impairment brought about by voluntary drug or alcohol intoxication, are not exceptions to the requirement for antecedent police coercive conduct:

> Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary.

*United States v. Newman*, 889 F.2d 88, 94-5 (6th Cir. 1989).

In *United States v. Treadwell*, 2000 WL 599709 (6th Cir. 2001), the defendant moved to suppress his confession on the basis that it was involuntary because he was overdosed on a prescription medication. The Sixth Circuit Court of Appeals upheld the trial court's denial of his motion to suppress, saying:

> Threshold to the determination that a confession was "involuntary"

5

> for due process purposes is the requirement that the police "extorted [the confession] from the accused by means of coercive activity." . . . Once it is established that the police activity was objectively coercive, it is necessary to examine petitioner's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused . . . . Finally, petitioner must prove that his will was overborne because of the coercive police activity in question. If the police misconduct at issue was not the "crucial motivating factor" behind petitioner's decision to confess, the confession may not be suppressed. . . .

2001 WL 599709, **9 [citing *McCall v. Dutton*, 863 F.2d 454 at 459, 6th Cir. 1988].

There was no antecedent coercive conduct by Agents Allen or Brown; in fact, defendant himself testified that he was not subjected to any coercive conduct.

Apart from the fact that there was no evidence that anyone coerced defendant to any degree prior to his statements, defendant was mentally alert at all relevant times, his prior use of Lortab notwithstanding. Indeed, a person can be of extremely limited intelligence, or even stuporously drunk, and still voluntarily make a statement. Whether that statement is *true* is an entirely separate issue from the voluntariness of the statement. Defendant always has the option of testifying before the jury in an effort to persuade the jurors that his statement does not reflect the truth, for whatever reason. The only viable issue for pretrial resolution, however, is the voluntariness *vel non* of the statement.

In the conversations he had with Agents Allen and Brown, he was logical and alert, and responded appropriately to all questions and statements posed to him. Suffice it to say that nothing about defendant's demeanor or speech suggested that defendant's statements were anything but knowing and voluntary.

There is no basis for this court to suppress defendant's statement. Accordingly, it is

6

respectfully recommended that defendant's motion to suppress, (Doc. 24) be denied.[4]

Respectfully submitted,

                s/ Dennis H. Inman
                United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).