IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

MARK EDWARD SALYER,          )
          Plaintiff,          )
                              )
                              )
v.                            )          Crim. Case No. 2:11-CR-04
                              )
                              )          Civ. Case No. 2:11-cv-113
UNITED STATES OF AMERICA,     )
          Defendant.          )

## MEMORANDUM IN SUPPORT OF 2255 MOTION

COMES NOW, Mark Edward Salyer, Petitioner, pro se, and
respectfully submits this Memorandum in Support of his Motion
to Vacate, Set Aside, or Correct his Sentence, pursuant to
28 U.S.C. § 2255. In so doing, the Petitioner attributes
ineffective assistance to counsel during the plea and sentencing
stages of the proceedings in the above styled criminal action.
Specifically, the Petitioner states that counsel: provided
incorrect advice regarding loss amounts and sentencing
enhancements, failed to subpoena documents from MetLife, failed
to advise the Petitioner of the option to enter an "open" plea
(without a written agreement), failed to object to the improper
calculation of the base and total offense levels under the
Guidelines, and failed to object to the incorrect restitution
amount calculation.

-1-

I. STATEMENT OF THE CASE

On January 12, 2011 a grand jury sitting in and for the
Eastern District of Tennessee named Mark Edward Salyer in a four-
count indictment, charging Wire Fraud, a violation of 18 U.S.C.
§ 1343, in the first three counts and Money Laundering in violation
of 18 U.S.C. § 1957 in the fourth.  (R.3)[1]

The initial appearance and arraignment was held on January
14, 2011 before the Honorable Magistrate Dennis H. Inman.  (R.4)
Attorney Tim S. Moore was appointed as counsel for the defense.
(R.6)

Attorney Dan Smith was retained on January 18, 2011, replacing
Mr. Moore as counsel of record for the defense.  (R.11,12)

A superseding indictment was issued on February 8, 2011,
adding each alleged defendant in a separate count of wire fraud,
for a total of 105 counts, including those appearing in the
original indictment.  (R.15)

A written plea agreement was entered between the prosecution

---

1.    References to the record will be cited as "R.#" and will reflect
the docket number assigned by the Court Clerk.

Case 2:11-cr-00004-JRG-DHI  Document 62  Filed 05/09/13  Page 2 of 32  PageID #: 174

and Mr. Salyer on September 13, 2011. (R.32) The Rule 11 change of plea hearing was held before the Honorable Judge J. Ronnie Greer on September 28, 2011. (R.33) Dan Smith remained as counsel for the defense during the plea process and throughout the proceedings ending in the imposition of sentence.

Sentencing was held before the Honrable Judge Greer on April 20, 2012. A concurrent term of 108 mohths imprisonment was imposed on Counts 1 and 4, all remaining counts were dismissed upon motion of the prosecution. (R.54) Final Judgment was entered on the record on May 2, 2012; the time to file a Notice of Appeal expired fourteen days later. (R.55)

No appeal or writ of certiorari was sought by either party.

## II.  STATEMENT OF THE FACTS

In May of 1994 Mr. Mark Salyer began working as an Account Representative for Metropolitan Life Insurance Company (MetLife) and was responsible for numerous clients in Kingsport and the surrounding areas. As Mr. Salyer continued his employment with MetLife he spent thousands of hours educating himself and obtaining certificates and degrees from sources outside MetLife.

-3-

Those included the Certified Financial Planner (CFP), Chartered
LIfe Underwriter (CLU), Chartered Financial Consultant (ChFC),
Accredited Estate Planner (AEP), and Certified Long Term Care
(CLTC). Mr. Salyer also completed approximately 24 hours toward
a second Masters degree, the Masters of Science Financial Service
(MSFS). Most if not all of these outside degrees and
certificates required Mr. Salyer to follow a code of ethics
that put the best interests of the client first, as opposed
to the best interest of himself or his employer.

Mr. Salyer maintained an office with other individuals
who were also employees of MetLife. The occupants of the office
shared operating expenses related to the office, but MetLife
itself was not named on the lease nor were they responsible
for the rent payments.

During his term of association with MetLife, Mr. Salyer's
managing Director at MetLife introduced Mr. Salyer to several
individuals who were extensively involved in real estate projects
throughout the Southeast. These companies include Harmony LLC,
the company responsible for the Harmony project outside
Birmingham, AL and Eagle Rock Properties, Inc., which was
involved in the Preserve at English Mountain project in Sevier
Co. TN. Prior to Mr. Salyer being introduced to the founders

-4-

of these companies and projects by his Managing Director at
MetLife Mr. Salyer had no knowledge of either the individuals
involved in the projects or the projects themselves.

For individual interest in any entity, Mr. Salyer filed
a Form U-4 (disclosure of outside business activities) with
MetLife.

One of the investors in SalMar was an individual named Dan
Rawls.  To the best of Petitioner's knowledge, Mr. Rawls had
never maintained an account with MetLife and was certainly never
a client of Mr. Salyer.[2]  Mr. Rawls has stated in sworn
depositions given in other matters that he made an investment
in SalMar Investors Group, LLC, along with several other real
estate related investments in the same time frame, and that
he made that investment of his own volition without ever having
met Mr. Salyer.  In 2005, Mr. Rawls became dissatisfied with
the progress of a real estate investment made by SalMar.  His
initial demands to Mr. Salyer for a return of his funds became
increasingly volatile until it reached a point where he began
making threats against Mr. Salyer's person, home, and family.
Mr. Rawls was ultimately charged with telephone harassment by
the local authorities and ordered as part of his plea agreement
to refrain from contacting Mr. Salyer.  Mr. Rawls harassment

---

2.  The PSI states Mr. Rawls obtained a judgment against Mr.
Salyer.  That is false.

was nothing more than an attempt to extort funds from Mr. Salyer
to replace those funds invested in SalMar Investors Group, LLC.

On or about 2006, Mr. Rawls approached MetLife regarding
his investment with SalMar and began demanding that MetLife
reimburse the loss he incurred, despite the fact that he never
placed any funds with MetLife or been a client of the Petitioner.

Mr. Rawls' complaints continued for approximately twelve
months until MetLife personnel approached Mr. Salyer in October
of 2007 regarding his placement of clients' investments outside
MetLife. During the meeting, Mr. Salyer's employment with
MetLife was suspended, and although MetLife was not an actual
tenant of the office, all of the furniture, files, and electronic
equipment were removed by MetLife.

At this point, Mr. Salyer cut off contact with all MetLife
clients. MetLife contacted all of the Petitioner's clients
- including those whose funds had not been transferred out of
their MetLife investment accounts - and reimbursed the amount
of investment claimed by each individual, in some instances
including an interest element in those reimbursements.

Attorney Dan Smith was retained by Mr. Salyer on or about
December of 2007 when the Securities Exchange Commission began

-6-

a civil action and named Mr. Salyer as a defendant.

On January 12, 2011, the Grand Jury named Mr. Salyer in a two-count indictment, charging Wire Fraud, in violation of 18 U.S.C. § 1343. Following the Petitioner's arraignment and release on $20,000 unsecured bond, Mr. Smith filed his appearance as counsel for the defense on January 18, 2011.

A Superseding Indictment was issued on February 8, 2011, adding one hundred and seven counts of Money Laundering, in violation of 18 U.S.C. § 1957.

In the Petitioner's discussions with counsel in the days following the issuance of the Superseding Indictment, Mr. Salyer agreed with counsel that, despite his belief he acted in good faith and within the confines of the law at all times during his employment with MetLife and other companies, the government had the ability to convict him on the charges alleged in the indictment.

When presented with the Government's proposed plea agreement, however, Mr. Salyer objected to a number of factual inaccuracies. Specifically, the Petitioner objected to the following:

-7-

> "[F]rom June 2005 to late 2007, SALYER knowingly and
> inappropriately diverted over $6,000,000 from IRA and
> brokerage accounts owned by his MetLife Securities clients
> ... He falsified documents to facilitate wire transfers
> of funds from client accounts to Horizon Holdings."
> (Plea Agreement at ¶4.)

Mr. Salyer informed his attorney that he had verbal
instructions from each of the individuals whose funds were
transferred out of MetLife accounts to place the investments
where he believed they would yield the highest rate of return,
with the greatest degree of safety and/or those clients acquiesced
to that transfer when notified immediately following the
transfer.

> "The following amounts were diverted from MetLife accounts
> into various accounts..." (Plea Agreement, pages 2-4.)

The Petitioner explained to counsel that the transactions
listed (i.e., those for Kristie Hustnatter on page 4 of the
Plea Agreement) reflected the same funds moving out of the
MetLife account to an account in that induviduals name then
being returned to the individual and the same funds being
reinvested at a later date. All these investments being made
in the best interest of the client and with Mr. Salyer earning
no compensation on the investment and those investments
generating no revenue for MetLife.

-8-

"MARK EDWARD SALYER forged customer signatures on distribution request forms, resulting in wire transfer of funds from clients' MetLife accounts into bank accounts owned by MARK EDWARD SALYER or his corporate entities. MARK EDWARD SALYER wrote checks payable to himself totaling $620,500."
(Plea Agreement, page 6.)

Although Mr. Salyer agreed that checks totaling the above stated amount were written to himself from Horizon Holdings, Inc the Petitioner informed his counsel that at a minimum a corresponding amount was deposited to Horizon Holdings, Inc directly from his personal line of credit, earnings, and credit card advances. All these transactions were properly documented in the corporate and client's records, which were all coverted from the office of Mr. Salyer by MetLife.[3]

"The defendant and the United States agree that ... the amount of loss should be limited to more than $2,500,000 but less than $7,000,000 for the sole purpose of determining the defendant's advisory guideline range, § 2B1.1(b)(1)(J)." (Pleas Agreement at ¶7)

As the Petitioner relayed to his attorney earlier, the amounts alleged by the prosecution were incorrect. In addition

3. Those records will also show thousands of dollars that were returned to clients.

to the objections listed above, any company that had received investments from an individual were also members of that entity and had a claim to the assets of that company. Those companies were in possession of assets at the time of his arrest that had to be applied against the investments before a loss amount could be calculated.

To the Petitioner's objections, counsel stated that (1) because MetLife was in possession of all documents related to Mr. Salyer's investment activities on behalf of his clients, no proof could be obtained to support his claim; (2) regardless of the fact that some of the withdrawals were made on behalf of the client and paid directly to them, all of the amounts listed in the plea agreement were counted as "loss" under the Guidelines; (3) despite the fact that a corresponding investment was made on behalf of clients for each deposit made into any company account, each of those deposits counted as "loss" under the Guidelines; and (4) the stipulated amount of loss was therefore correct.

In addition to the foregoing, defense counsel informed Mr. Salyer that this was the only plea offer he would receive from the prosecution and his only other option was to proceed to trial. And as a former prosecuting attorney, Petitioner's attorney assured him that conviction was a certainty.

-10-

Following the change of plea hearing, a Pre-Sentence
Investigation report (PSI) was generated on March 15, 2012.

Paragraph 9 of the PSI listed the victims and amounts each
individual claimed to have lost.  The Petitioner relayed to
counsel that he was in possession of documentation from the
SEC civil action that contradicted the amounts alleged, and
that those documents would demonstrate thousands of dollars
that had been returned to individuals prior to October 2007.

Paragraphs 20 through 24 of the PSI included in the loss
amount a total of $985,697.37 in interest imposed in an amended
judgment issued in the related SEC civil action.  No objection
was lodged by defense counsel with respect to the inclusion
of this amount.

Paragraph 21 of the PSI listed six individuals alleged
to have sustained losses from the Petitioner's investments.
Mr. Salyer noted to his attorney that these individuals were
not listed in the indictment and their entire investment remained
with MetLife.  Further, some of the listed individuals had been
reimbursed by MetLife over and above the amount of their
investment.

Mr. Salyer requested that counsel object to the recommended increase to his base offense level in paragraph 29 for the assertion that the offense involved more than 10 victims. Paragraph 71 listed only three (3) entities owed restitution.

Mr. Salyer further requested that counsel object to the 4 level enhancement in paragraph 29 for violation of securities law.  In the action brought by the Securities Exchange Commission it clearly states that Mr. Salyer "was involved in several business activities outside the scope of his employment at MetLife."  Each of these activities were properly disclosed to MetLife by Mr. Salyer, and many were initiated by the introduction to those original to the activities to Mr. Salyer by  his MetLife Managing Director.  These activities "outside the scope of his employment at MetLife" could not be considered a violation of securities law.

No objections were lodged by defense counsel on Mr. Salyer's behalf.

Counsel was notified of the Government's intention to call allocution witnesses at sentencing.  At sentencing, the prosecution called Russel Furguson, Rita Ratliff, and others who made incorrect statements regarding the amount of loss they

-12-

sustained. Although counsel was in possession of documentation that disputed much of the testimony, no attempt was made to clarify the record.

III. <u>JURISDICTION</u>

The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 2255 which allows a prisoner/defendant to petition the original sentencing court to vacate, set aside, or correct a sentence or conviction that was imposed in violation of the Constitution or law of the United States, or for any other grounds cognizant to collateral review.

In this instant matter, the Petitioner attributes ineffective assistance to defense counsel both during the plea and sentencing phases of the proceedings in the above styled criminal action in violation of the constitutional guarantee of effective representation of counsel.

The Petitioner submits that the instant action has been filed in a timely fashion pursuant to § 2255(f)(1) which allows a petition to be filed within one year of the date on which the judgment of conviction becones final. The Court's judgment in the above styled criminal action became final when the

-13-

deadline for filing a notice of appeal expired on May 16, 2012
- fourteen days after final judgment was entered on the record.
See, Clay v. United States, 537 U.S. 522, 527 (2003); Sanchez
-Castellano, 358 F.3d 424, 427 (6th Cir. 2004)("When a criminal
defendant does not appeal to the court of appeals, the judgment
becomes final upon expiration of the period in which the
defendant could have appealed to the court of appeals, even
when no notice of appeal was filed.") In a criminal case, a
defendant's notice of appeal must be filed in the district court
within 14 days after the entry of judgment. F.R.Crim.P. 4(b)(1).
The instant action is deemed filed on the day it is placed in
the hands of prison authorities for mailing. Houston v. Lack,
487 U.S. 266, 275 (1988).

With regards to the technical requirements under the Federal
Rules of Criminal and Civil Procedure, the Petitioner notes
that he is acting pro se in this instance and is therefore held
to less stringent standards than those expected of a licensed
attorney. See, Haines v. Kerner, 404 U.S. 519, 520 (1971).

IV. <u>GROUNDS FOR RELIEF: INEFFECTIVE ASSISTANCE OF COUNSEL</u>

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. <u>United States Constitution, Sixth Amendment</u>

In the decision that set the benchmark for issues relating to the effective assistance of counsel, the Supreme Court noted, "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled." <u>Strickland v. Washington</u>, 466 U.S. 668, 685 (1984) (internal citation and quotation marks omitted). "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." <u>Id.</u> For that reason, the Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." <u>Id.</u> at 686.

Claims of counsel's constitutionally deficient performance are reviewed under a two-part test established in <u>Strickland</u>,

-15-

466 U.S. at 668. To establish ineffective assistance of counsel, it must be shown that (1) counsel's deficient performance (2) prejudiced the defense. See id. at 687. Representation is deficient if it falls below "an objective standard of reasonableness." Id. at 688. It must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." Id. at 687. The standard of review for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 669. To prevail, the petitioner must overcome the presumption that the challenged action may be considered "sound trial strategy." Id. at 689.

In the case at bar, the Petitioner attributes constitutionally deficient performance to defense counsel in two distinct areas: during the guilt and sentencing phases in the above styled criminal action.

1.    Constitutionally defective assistance regarding entry
      of guilty plea

The Sixth AMendment to the U.S. Constitution guarantees criminal defendants the right to the assistance of counsel during their criminal proceedings. Strickland, supra. This right extends

-16-

to the plea-bargaining process, during which defendants are "entitled to the effective assistance of competent counsel." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012)(internal quotation marks omitted.) "[T]he right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences." Id. at 1388. A knowing and voluntary plea does not supersede counsel's errors when advising whether to accept or reject a plea offer. Missouri v. Frye, 132 S.Ct. 1399, 1402 (2011)(Citing Padilla v. Kentucky, 130 S.Ct. 1473, 1476 (2010)).

To prove a claim of ineffective assistance in relation to the entry of the plea agreement, the petitioner must show a reasonable probability that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In context of the issue raised herein, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S.Ct. at 1485.

In the case at bar, Mr. Salyer attributes deficient performance to counsel in three distinct areas and submits that, absent these errors the outcome of the above styled criminal action would have produced a lesser sentence.

-17-

A. Counsel failed to subpoena documents from MetLife or verify the claimed loss amount.

Before advising his client regarding a decision to accept or reject a plea offer, counsel has the obligation of conducting "reasonable investigations or [reaching] a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "Counsel cannot responsibly advise a client about the merits of different courses of action, [and] the client cannot make informed decisions ... unless counsel has first conducted a thorough investigation ..." Dickerson v. Bagley, 453 F.3d 690, 694 (6th Cir. 2006)(internal quotation marks omitted)).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," but "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. "It is not reasonable to refuse to investigate when the investigator does not know the relevant facts the investigation will uncover." Dickerson, 453 F.3d at 696. If an attorney's "failure to investigate does not reflect sound professional judgment," deference to the attorney's purported strategic choices is "not appropriate." Dando v. Yukins, 461 F.3d 791, 799 (6th Cir.

-18-

2006)(refusing to defer to the attorney's decision not to invest resources in a valid and available defense because the decision represented a misunderstanding of the applicable law rather than sound professional judgment).

After receiving a number of complaints from an individual who was not an account holder with the company, MetLife entered the Petitioner's office and removed every single document maintained there along with all of the computers and furniture. In the criminal action that followed, prosecutors relied exclusively on MetLife's loss amount.

The amounts claimed by MetLife, however, contained a number of factual inaccuracies: (1) some of the amounts reflected account balances held by individuals whose funds had not been transferred out of their MetLife investment accounts and had therefore not sustained any losses; (2) some of the amounts reflected funds moving out of the MetLife account, back to a MetLife account and the same funds being moved to a non MetLife account again at a later date, resulting in the same funds being counted multiple times; (3) the $620,500 purported to have been transferred to the Petitioner himself was offset by deposits made by the Petitioner to Horizon Holdings, Inc.; (4) based on erroneous information from MetLife, Petitioner's Errors and Omissions insurance carrier made payments to individuals.

-19-

MetLife then claimed reinbursement for the amounts paid unnecessarily by the insurance carrier, and (5) the companies outside MetLife that had received investments from an individual listed the individual as a member with claim to the assets of that company.

Each of these inaccuracies were relayed to counsel. Mr. Salyer further explained that MetLife was in possession of all of his records which detailed each transaction he made on his clients' behalf. Despite this knowledge, however, defense counsel neglected to subpoena copies of the records possessed by MetLife and was therefore unable to intelligently negotiate a plea agreement that reflected correct loss amounts or to advise the Petitioner regarding acceptance or rejection of the plea offer.

B.  Counsel provided incorrect advise regarding the Guideline offense level stipulations.

"[F]amiliarity with the structure and basic content of the Guidelines ... has become a necessity for counsel who seeks to give effective representation." United States v. Wolfe, 1012 U.S. Dist. LEXIS 75369 (E.D.Tn. May 31, 2012)(citing United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).  The failure

of defense counsel to "provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." Moss v. United States, 323 F.3d 445, 474 (6th Cir. 2003). See also, Magana v. Hofbaur, 263 F.3d 542, 550 (6th Cir. 2001)(holding that the defense counsel's erroneous advice concerning sentence exposure "fell below an objective standard of reasonableness under prevailing professional norms").

In the case at bar, counsel advised his client incorrectly with respect to the stipulated Guideline calculation in two distinct areas.

### 1. Loss Amount

"[T]he victim's 'loss' means **actual** loss, the amount of the [investment] not repaid at the tine the offense is discovered." U.S. v. Buckner, 9 F.3d 452, 454 (6th Cir. 1993) (emphasis in original).

In the case at bar, Mr. Salyer moved funds from investors' accounts with MetLife and placed them with non-MetLife accounts. On many occasions, those accounts paid dividends to the investors and at the time MetLife confiscated all of the Petitioner's documents, those accounts retained assets that belonged to the investors.

-21-

In addition to this fact, many of the amounts claimed by the victim MetLife stemmed from account activities reflecting the same funds moving out and back and out again of the investors' accounts.

Although these facts were pointed out by the Petitioner, defense counsel expressed his mistaken belief that every withdrawal out of the MetLife accounts counted as "loss" under the Guidelines, regardless of the underlying basis for those withdrawals and regardless of any corresponding assets returned to the investor.

As with the case in United States v. Rothwell, 387 F.3d 579, 584-85 (6th Cir. 2004), however, Mr. Salyer "returned or replaced the money he improperly obtained before the offense was detected and is thus entitled to a credit equal to the amount of the replaced funds."

Counsel's advise regarding the stipulation of the loss amount was therefore incorrect.

2. Number of Victims

Paragraph 7 of the Plea Agreement contained a stipulation reflecting, "The parties agree that the number of victims exceeds

-22-

10 (§2B1.1(b)(2)(A)). As evidenced in the plea agreement, this stipulation considered each investor as a separate individual victim. Counsel's advise regarding acceptance of this stipulation ran contrary to existing precedence in this circuit.

> Because the account holders temporarily lost funds from their accounts, the United States claims that they should be considered victims despite the fact that they were reimbursed. We disagree. In our view, these account holders are not "victims" under the Guidelines because they were fully reimbursed for their temporary financial losses."

United States v. Yager, 404 F.3d 967, 969-71 (6th Cir. 2005). Accord: United States v. Stubblefield, 682 F.3d 502 (6th Cir. 2012); United States v. Munar, 419 Fed. Appx. 600, 612 (6th Cir. 2011).

In the case at bar, MetLife reimbursed all of the Petitioner's account holders for the full value of their original deposit, including in some instances an additional interest amount, regardless of the actual amount of loss - if any. Accordingly, there was only one victim in this instance. Counsel's advice to stipulate to this enhancement was constitutionally defective.

C. Counsel failed to advise of the option to enter an 'Open' plea (without a written plea agreement).

Although [t]he decision to plead guilty - first, last, and always - rests with the defendant, not his lawyer,"

-23-

the Sixth Circuit has nonetheless maintained that "the attorney has a clear obligation to fully inform [his] client of the available options." Smith v. United States, 348 F.3d 545, 552 (6th Cir. 2003). "A failure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." Moss v. United States, 323 F.3d 445, 474 (6th Cir. 2003)(citing the habeas case of Magana v. Hefbauer, 263 F.3d 542, 550 (6th Cir. 2001)). Defense counsel thus carries the "paramount" duty to "ensure that the client's decision [to waive his constitutional right to trial] is as informed as possible." Miller v. Straub, 299 F.3d 570, 580 (6th Cir. 2002).

When Mr. Salyer informed defense counsel of his objections to the plea agreement as offered by the prosecution, counsel responded that the Petitioner was faced with two options: accept the plea agreement or proceed to trial. Mr. Salyer had no intention of contesting his guilt in this manner, and does not do so in this action, so he accepted the only remaining option made available by counsel's advice: he accepted the offered plea agreement.

The advice proffered by Mr. Salyer's attorney contained a constitutionally significant flaw in that he failed to advise

-24-

the Petitioner of a third option, the ability of a defendant
to enter an 'Open' plea of guitly, i.e., without a written plea
agreement.

The Petitioner is well aware that the Government is not
required to offer a plea agreement to every defendant in federal
cases. The significant omission in counsel's advice is that
the reverse is also true; a defendant is not required to enter
into an agreement with the government prior to entering a plea
of guilt. The Petitioner respectfully avers that he would have
foregone a plea agreement altogether if counsel had correctly
advised him on the above listed Guideline calculation issues
and if the Government had refused to correct the errors in the
proffered agreement.

The test for determining prejudice in claims of counsel's
deficient performance related to the entry into a plea agreement
normally requires a showing that "there is a reasonable
probability that, but for counsel's errors, [the Petitioner]
would not have plead guilty and would have insisted on going
to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). However,
in an unpublished case, the Sixth Circuit noted, "[W]e do not
interpret Hill as holding that when a defendant filed a § 2255
motion to vacate or modify his sentence based on errors committed
by his or her counsel during the plea bargain stage, the
dispositive question is limited to whether the ineffective

-25-

assistance of counsel affected the defendant's decision to plead guilty. Hall simply did not address whether the defendant may satisfy the Strickland test by demonstrating that but for his or her attorney's error, the conditions of his or her guilty plea and/or sentence would have been different." Newman v. United States, 162 F.3d 1162 (table), [published in full-text format at 1998 U.S.App. LEXIS 20565] (6th Cir. 1998). "We therefore conclude that justice requires that the defendant be afforded the opportunity to show under the Strickland standard that there is a reasonable probability that the conditions of his guilty plea or his sentence would have been different but for his trials's counsel's error." Id. This holding has been applied in a situation similar to the one at bar where counsel's incorrect advise resulted in the decision to accept a plea agreement rather than entering an 'open' plea. See Diaz-Murillo v. United States, 2007 Dist. LEXIS 32094 (M.D. Tenn. May 1, 2007).

### 2. Constitutionally defective assistance during the Sentencing Phase

"A defendant facing the possibility of incarceration has a Sixth Amendment right to counsel at all "critical stages' of the criminal process, and a sentencing hearing is one type of 'critical stage' at which the right to counsel attaches." Benitez v. United States, 521 F.3d 625, 630 (6th Cir. 2008) (internal quotation marks and alterations omitted). Counsel's

-26-

failure to object to an error at sentencing or failure to raise
a viable argument that would reduce his client's sentence may
constitute deficient performance. See, United States v. Thomas,
38 Fed. Appx. 198, 203 (6th Cir.)(citing United States v. Soto,
132 F.3d 56, 58-59 (D.C. Cir. 1997)) cert. denied, 537 U.S.
866 (2002).

The Petitioner respectfully submits that counsel rendered
constitutionally deficient performance at sentencing in the
following areas.

A.   Counsel failed to object to the loss amount and
     enhancement for 10 victims.

The Petitioner incorporates the discussions above regarding
the loss amount and enhancement for 10 victims by reference
as if fully restated in this section.

With respect to the loss amount, the Petitioner notes that
counsel's failings during the plea negotiation process and
misunderstanding of the applicable Guideline provisions likewise
resulted in the failure to object to the erroneous loss
calculation in the Pre-Sentence Investigation report.

-27-

Nevertheless, the calculation impacted not only Petitioner's sentence, but his restitution as well. Because the stipulation only involved the offense level for 2.5 to 7 million dollars, the specific amount was not agreed upon by the parties and counsel had an obligation to contest the invalid amounts described above.

With respect to the enhancement for more than 10 victims, however, "[p]arties may not stipulate to legal conclusions to be reached by the court," Nevens v. City of Columbus, 303 F.3d 667 (6th Cir. 2002), and "[w]hether a person is a victim under the Sentencing Guidelines is a legal conclusion [that the appellate courts] review de novo," United States v. Stubblefield, 682 F.3d 502, 552 (6th Cir. 2012)(alterations in the original).

Accordingly, any stipulation in the plea agreement notwithstanding, defense counsel could have objected at sentencing to the enhancement for more than 10 victims.

B. Counsel failed to object to the enhancement for violation of securities law.

The enhancement for an alleged violation of securities law in the PSI was supported only by the allegation that Mr. Salyer conducted business outside the scope of his employment with MetLife. The Petitioner explained to counsel, however, that he filed the requisite SEC forms with the employer prior to

-28-

and during any activity conducted outside MetLife.

Counsel's failure to object to this enhancement, therefore, fell below any expectation that he would act as an advocate on his client's behalf.

C. Counsel failed to object to the inclusion of $985,697.37 in interest as "loss."

Paragraph 20 through 24 of the PSI added nearly $1 million to the loss calculation and corresponding restitution amounts. Counsel did not object to the addition of this amount.

"Under Application Note 2(D)(i) certain damages are excluded from 'actual loss,' such as 'interest of any kind, finance charges, late fees, penalties, amounts based on an agreed-upon return or rate of return, or other similar costs." United States v. Yagar.

The inclusion of interest in the loss calculation by the PSI, therefore, was in error. Counsel's failure to object to same was constitutionally defective.

D. Counsel failed to object to the amount of restitution.

"An award of restitution must be based on the amount of loss actually caused by the defendant's conduct." United States

-29-

v. Rothwell, 387 F.3d 579, 585 (6th Cir. 2004)(quoting United States v. Liss, 265 F.3d 1220, 1231 (7th Cir. 2001)).

The Petitioner incorporates the dicussions regarding credits against loss and prohibition against including interest amounts above by reference as if fully restated herein. Because these amounts were incorrectly added to the loss calculation, they were likewise added to the restitution amounts in error. Counsel's failure to object to the restitution calculation was therefore constitutionally inadequate.

## V. CONCLUSION

WHEREFORE, the Petitioner, Mark Edward Salyer, respectfully Moves this Honorable Court to: (1) VACATE and REIMPOSE the plea of Guilty in the above styled action without consideration of the invalid plea agreement or stipulations contained therein; (2) VACATE and REIMPOSE sentence in the above styled criminal action based upon the correct loss amount and without enhancements for more than 10 victims or securities violations; (3) CORRECT the restitution to reflect the actual loss sustained by the victims and without the inclusion of interest previously imposed by this or any other court.

Respectfully submitted,

Dated: 06 MAY 2013

Mark Edward Salyer, pro se
FCI Beckley, 43560-074
P.O. Box 350
Beaver, WV 25813

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that a true and correct copy of the foregoing has been placed in the institutional mailbox, appropriate postage prepaid and addressed to:

AUSA Office
U.S. Courthouse
220 W. Depot Street
Greeneville, TN 37743

on this, the 06 day of May, 2013.

Mark Edward Salyer, pro se

## VERIFICATION

I hereby swear under penalty of perjury that the statements of fact and description of events cited in the foregoing Memorandum in Support are true and correct to the best of my knowledge and belief or recollection.

Dated: 06 MAY 2013

Mark Edward Salyer, pro se

-31-

P O Box 350
Federal Prison Camp
Beaver, WV 25813
United States

⇦43560-074⇨
Us Courthouse
220 W Depot ST
Suite 200
Greeneville, TN 37743
United States

LEGAL
MAIL