# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | | |
|---|---|---|
| MARK SALYER, | ) | |
| Petitioner, | ) | Nos. 2:11-cr-4 |
| | ) | 2:13-cv-113 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Greer |
| Respondent. | ) | |

## RESPONSE TO PETITIONER'S MOTION
## FILED PURSUANT TO 28 U.S.C. § 2255

The United States of America, by its counsel, Luke A. McLaurin, Assistant United States Attorney for the Eastern District of Tennessee, opposes petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Petitioner's claims lack merit, and his motion should accordingly be denied.

## I. BACKGROUND

Petitioner was employed by MetLife Securities until 2007 and was responsible for investment strategies regarding numerous individual retirement accounts ("IRA") and brokerage accounts for residents of the Eastern District of Tennessee. (R. 32, Plea Agreement at 2.) In 2004, petitioner formed SalMar Investors Group LLC to pursue various real estate ventures. (*Id*.) Petitioner incurred millions of dollars of debt as a result of those ventures and exhausted his personal wealth to keep them operating. (*Id*.; *accord* R. 15, Superseding Indictment at 2.) When additional funds were needed to finance the SalMar projects, petitioner diverted over $6 million from his MetLife clients' IRA and brokerage accounts into accounts controlled by petitioner. (R. 32, Plea Agreement at 2; *accord* Presentence Investigation Report ("PSR") at ¶¶ 9-24.) Petitioner falsified documents to facilitate wire transfers of client funds and invested

that money in real estate ventures without their knowledge or authorization. (R. 32, Plea Agreement at 2; *accord* PSR at ¶¶ 14-17.) Petitioner also used client funds for personal expenses and for payments to other SalMar investors. (R. 32, Plea Agreement at 5.) To conceal the theft, petitioner provided clients with altered account statements and lied to them about the location and amounts of their funds. (*Id*.; *accord* PSR at ¶¶ 18-20.)

Based on that conduct, petitioner was charged with two counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts One and Two); and over one hundred counts of money laundering, in violation of 18 U.S.C. § 1957 (Counts Three through One Hundred Five). (R. 15, Superseding Indictment.) Petitioner pleaded guilty to two of those charges—one wire fraud offense and one money laundering offense—pursuant to a written plea agreement. (R. 32, Plea Agreement.)

In that agreement, petitioner stipulated that the amount of loss under U.S.S.G. § 2B1.1(b)(1)(J) was between $2.5 million and $7 million. (*Id*. at 6-7.) Petitioner also agreed that his offense involved at least ten victims for purposes of § 2B1.1(b)(2)(A). (*Id*. at 7.) Based on those concessions as well as the Court's determination that petitioner's offense involved a violation of securities law under § 2B1.1(b)(18)(A), petitioner's total offense level was 31. (PSR at ¶¶ 29-38.) Combined with his criminal history category of I, that offense level resulted in an advisory Guidelines range of 108 to 135 months' imprisonment. (*Id*. at ¶ 59.)

On May 2, 2012, petitioner was sentenced to the bottom of that range and ordered to pay $6,713,364.37 in restitution. (R. 55, Judgment.) Petitioner did not appeal his conviction or sentence, and they became final on May 16, 2012. Less than a year later, on April 25, 2013, petitioner filed this timely § 2255 motion. (R. 60, § 2255 Motion.)

## II. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to obtain relief under § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

Moreover, a petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1987). First, he must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id*. at 687, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action might be considered sound trial strategy") (internal citation omitted).

Second, a petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). To show prejudice in the context of a guilty plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

### III. DISCUSSION

Petitioner seeks § 2255 relief on the ground that his counsel was allegedly ineffective during plea negotiations and at sentencing. (R. 60, § 2255 Motion at 4-5.) Specifically, petitioner claims that counsel was ineffective by allegedly (1) not subpoenaing unspecified documents from MetLife (R. 62, § 2255 Memorandum at 18-20); (2) advising petitioner to stipulate to the loss calculation in the plea agreement (*id.* at 20-22); (3) advising petitioner to stipulate to the number of victims in the plea agreement (*id.* at 22-23); (4) not informing petitioner that he could plead guilty without a plea agreement (*id.* at 23-26); (5) not objecting to the number of victims at sentencing (*id.* at 27); (6) not objecting to the loss calculation at sentencing (*id.* at 28-29); (7) not objecting to the § 2B1.1(b)(18)(A) securities-law-violation

enhancement at sentencing (*id*. at 28-29); and (8) not objecting to the restitution amount at sentencing (*id*. at 29-30). None of those claims satisfy *Strickland*'s two-part standard.

A.  Petitioner has not established that counsel was constitutionally ineffective by not subpoenaing various unspecified documents from MetLife. (*Ground One*)

Petitioner faults counsel for not subpoenaing unspecified documents from MetLife that would allegedly have shown that there were "a number of factual inaccuracies" in the stipulated loss amount in the plea agreement. (R. 62, § 2255 Memorandum at 19.) Specifically, petitioner claims that the unspecified documents would have shown that (1) some of the stipulated loss amount allegedly involved money that was not actually transferred out of MetLife accounts; (2) some of the stipulated loss amount allegedly reflected double counting of the same money; (3) some of the money which petitioner transferred to himself was allegedly offset by "deposits" which petitioner put into various accounts; (4) some of the stipulated loss amount resulted from allegedly erroneous payments by MetLife's insurance carrier; and (5) petitioner's clients allegedly received financial value from the "investments" into which petitioner transferred their funds. (*Id*. at 19-20.)

Those bald allegations do not demonstrate that counsel was constitutionally ineffective in not subpoenaing the unspecified MetLife documents. *See*, *e.g.*, *Reams v. Davis*, 333 F.2d 430, 430 (6th Cir. 1964) (explaining that an "unsupported conclusory allegation" is not "sufficient to require the [c]ourt to grant a hearing," much less relief). Indeed, petitioner's unsupported allegations do not establish that the unspecified MetLife documents actually existed or would have demonstrated the alleged "inaccuracies" in the stipulated loss amount. *See*, *e.g.*, *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999) (explaining that a petitioner does not create a factual dispute "simply by proclaiming his innocence"). Moreover, those self-serving allegations are inconsistent with petitioner's guilty plea to Count One and his acknowledgement that he

5

"knowingly and inappropriately diverted over $6,000,000 from IRA and brokerage accounts owned by his MetLife Securities clients." (R. 32, Plea Agreement at 2; *accord* R. 15, Superseding Indictment at 2-3 (listing over $3.2 million of unlawful transactions).) *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")

Finally, even if true, the allegations at best suggest that there may have been some minor inaccuracies in the over $6 million loss amount. However, petitioner stipulated to a Guidelines loss range of between $2.5 million and $7 million. (R. 32, Plea Agreement at 6.) Petitioner's allegations do not suggest that the actual loss amount was less than $2.5 million. As such, petitioner has not established that his counsel was deficient in not seeking the unspecified MetLife documents, let alone demonstrated that the presence of those documents would have altered petitioner's loss amount stipulation. Petitioner's ineffective-assistance-of-counsel claim should be denied.

B.  <u>Petitioner has not established that counsel was constitutionally ineffective with respect to litigating either the amount of loss under § 2B1.1(b)(1) or the amount of restitution.</u>
(*Grounds Two, Six, and Eight*)

Petitioner claims that counsel erroneously advised him to stipulate to a loss amount of between $2.5 million and $7 million and failed to properly contest that issue and the amount of restitution at sentencing. (R. 62, § 2255 Memorandum at 21-22, 27-30.) However, petitioner has not demonstrated that the actual loss amount in his case was not in the stipulated range and offers no basis on which counsel could have legitimately challenged the restitution award.

6

Petitioner baldly asserts that the "non-MetLife accounts" where he placed his clients' money actually paid dividends to the clients. (*Id*. at 21.) Petitioner also alleges that "many of the amounts claimed by the victim MetLife stemmed from account activities reflecting the same funds moving out and back and out again of the investors' accounts." (*Id*. at 22.) Yet petitioner fails to offer any evidence to back those assertions. Moreover, as already noted, those vague assertions suggest at best minor inaccuracies in the over $6 million dollar loss amount calculated by the Court. Petitioner offers no evidence on which counsel could have reasonably relied to argue that his loss amount was less than the $2.5 million threshold in § 2B1.1(b)(1)(J).

Petitioner also alleges that the Court improperly included nearly $1 million of interest in its loss calculation. (R. 62, § 2255 Memorandum at 29 (citing PSR at ¶¶ 20-24).) Nothing in the PSR indicates that interest was included in the total loss calculation of $6,807,434.81. (PSR at ¶ 24.) However, even if that amount erroneously included $1 million dollars of interest, the loss calculation would still have been between $2.5 million and $7 million dollars and, thus, petitioner's advisory Guidelines range would have been the same. With respect to the restitution award, any inclusion of interest would not have been improper. *See*, *e.g.*, *United States v. Rutley*, 482 F. App'x 175, 179 (7th Cir. 2012) ("Restitution [unlike the amount of loss] is calculated under 18 U.S.C. § 3663A and U.S.S.G. § 5E1.1, and those provisions do not exclude bargained-for interest (or finance charges) from a restitution award.").

In short, petitioner has failed to establish any basis on which counsel should have contested the § 2B1.1(b)(1) loss amount or the restitution amount determined in this case. As such, petitioner has not demonstrated that counsel was constitutionally ineffective with respect to those issues during either plea negotiations or sentencing.

C. Petitioner has not established that counsel was constitutionally ineffective with respect to litigating the number of victims under § 2B1.1(b)(2). (*Grounds Three and Five*)

Petitioner also claims that counsel erroneously advised him to stipulate that there were at least ten victims and failed to properly contest that issue at sentencing. (R. 62, § 2255 Memorandum at 22-23, 27-28.) Specifically, petitioner contends that the victim stipulation was erroneously based on the assumption that each of petitioner's clients counted as a victim. (*Id*. at 23.) Petitioner argues that, because MetLife reimbursed petitioner's clients for the full value of their original deposits, there was only one victim, *i.e.*, MetLife. (*Id*.) Petitioner has not established either that counsel acted outside the bounds of prevailing professional norms by not making that argument or that petitioner was prejudiced by counsel's decision not to advance such an argument.

The Guidelines define a "victim" for purposes of § 2B1.1(b)(2) as "any person who sustained any part of the actual loss" attributable to the defendant. U.S.S.G. § 2B1.1, cmt. (n.1). Petitioner correctly notes that bank or credit card account holders who are "fully reimbursed for temporary financial losses" are generally not considered victims in the Sixth Circuit. *United States v. Stubblefield*, 682 F.3d 502, 511 (6th Cir. 2012) (citing *United States v. Yagar*, 404 F.3d 967, 971 (6th Cir. 2005)). However, the Sixth Circuit has only applied that rule to situations "where the monetary loss is short-lived and immediately covered by a third-party" and has recognized that "there may be situations in which a person could be considered a 'victim' under the Guidelines even though he or she is ultimately reimbursed." *Yagar*, 404 F.3d at 971; *see also United States v. Erpenbeck*, 532 F.3d 423, 442 (6th Cir. 2008) (finding that homeowners who suffered losses as a result of a developer's bank fraud, but were able to recover their losses after banding together in a class action suit were victims under § 2B1.1(b)(2)).

8

Petitioner's investment account clients were different than the bank customers in *Yagar*. Petitioner's clients did not just suffer a temporary absence of money from their checking accounts, but rather suffered lost growth opportunities in their retirement and investment accounts based on petitioner's fraudulent diversion of funds from those legitimate accounts to petitioner's faulty real estate ventures over the course of several years. As such, petitioner's clients were victims who suffered an actual loss from his unlawful activities despite MetLife's ultimate reimbursement of the funds that had been diverted from their investment accounts. *See United States v. Loffredi*, 718 F.3d 991, 993-94 (7th Cir. 2013) (finding that clients of a securities broker who unlawfully diverted funds from their investment accounts were "victims" under § 2B1.1(b)(2) despite the fact that they were ultimately reimbursed for the improperly dispersed funds by the brokerage firm).

In short, petitioner has not established that his counsel unreasonably determined that petitioner's clients were victims under § 2B1.1(b)(2). As such, petitioner has not shown that counsel was deficient in failing to make a contrary argument. Nor has petitioner established that he was prejudiced by the absence of such an argument at sentencing. Indeed, given the large difference between petitioner's clients and the bank customers in *Yagar* and the other Sixth Circuit reimbursement cases, it is not likely that this Court would have concluded that petitioner's clients were not victims under § 2B1.1(b)(2). Accordingly, petitioner's ineffective-assistance-of-counsel claim with respect to this issue should be denied.

D. <u>Petitioner has not established that counsel was constitutionally ineffective by not objecting to the § 2B1.1(b)(18)(A) securities-law-violation enhancement.</u> (*Ground Seven*)

Petitioner faults counsel for not objecting to the § 2B1.1(b)(18)(A) securities-law-violation enhancement. (R. 62, § 2255 Memorandum at 28-29.) However, petitioner offers no

9

basis on which counsel could have legitimately objected to that enhancement. Petitioner claims that the enhancement "was supported only by the [purportedly false] allegation that [petitioner] conducted business outside the scope of his employment with MetLife." (*Id*. at 28.) Petitioner is mistaken.

Petitioner's conduct involved numerous violations of securities laws beyond just conducting outside business. Petitioner forged client signatures on distribution requests which the clients had not authorized. (PSR at ¶¶ 14-17.) Petitioner also lied to his clients about the nature of the investments that he was recommending to them and produced fraudulent account statements. (*Id*. at ¶¶ 18-20.) Petitioner was ultimately held liable for unlawful disgorgement of client funds in a separate civil action brought by the Securities and Exchange Commission. (PSR at ¶ 20.) Those facts provided this Court with more than a sufficient basis to apply the § 2B1.1(b)(18)(A) securities-law-violation enhancement. Petitioner has not demonstrated any legitimate grounds on which counsel could have challenged that enhancement. As such, he has not demonstrated either the deficient performance or prejudice necessary to support his ineffective-assistance-of-counsel claim.

E. <u>Petitioner has not established that he was prejudiced by counsel's alleged failure to explain all of his plea options.</u> (*Ground Four*)

Finally, petitioner claims that counsel failed to advise petitioner that he had the option of pleading guilty without a plea agreement. (R. 62, § 2255 Memorandum at 24-25.) However, petitioner has not demonstrated that he was prejudiced by that alleged error. Petitioner acknowledges that he "had no intention of contesting his guilt" by proceeding to trial. (*Id*. at 24.) Instead, petitioner claims that, had he known he could plead guilty without a plea agreement, he would have done so. (*Id*. at 25.) Yet, if petitioner had pleaded guilty without a plea agreement, the result of the proceedings would not have been better for him, but would likely have been

worse. Given the government's evidence of the actual loss caused by petitioner, the number of victims, and petitioner's violations of securities laws (PSR at ¶¶ 9-24), petitioner's advisory Guidelines range would have likely been the same, or possibly greater. Indeed, without the plea agreement, it is not likely that petitioner would have received the additional one-level reduction for acceptance of responsibility under § 3E1.1(b). (R. 32, Plea Agreement at 7.) Moreover, petitioner would have been subject to a much higher total statutory maximum sentence since he would have pleaded guilty to all 105 counts in the indictment as opposed to the 2 listed in his plea agreement. Thus, petitioner has not shown that, even if he had been informed of the option to plead guilty without a plea agreement, there is reasonable probability that the result of the proceedings would have been different. Petitioner's ineffective-assistance-of-counsel claim with respect to this issue should be denied.

## IV. CONCLUSION

In sum, petitioner's ineffective-assistance-of-counsel claims do not satisfy *Strickland*'s two-part standard. Accordingly, petitioner's § 2255 motion should be denied.

    Respectfully submitted,

    William C. Killian
    United States Attorney

By:   *s/ Luke A. McLaurin*
    Luke A. McLaurin
    Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2013, the foregoing response was filed electronically and a true copy was sent to petitioner by regular United States mail, postage prepaid, addressed as follows:

Mark Sayler
No. 43560-074
F.C.I. Beckley
P.O. Box 350
Beckley, WV  25813

                                            *s/ Luke A. McLaurin*
                                            Luke A. McLaurin
                                            Assistant United States Attorney