| | |
|---|---|
| MARK SALYER, | ) |
| Petitioner, | ) |
| | ) Crim. No. 2:11-cr-004 |
| | ) Civil No. 2:13-cv-113 |
| v. | ) |
| | ) |
| | ) Judge Greer |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |
| | ) |

## ANSWER TO GOVERNMENT'S RESPONSE

COMES NOW, Mark Salyer, Petitioner, pro se, and respectfully submits this Answer to the Response (Cr. Doc. 67) filed in opposition to the pending Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 in the above styled actions. In so doing, the Petitioner notes that the Respondent does not contest the constitutional deficient performance provided by counsel in the above styled criminal matter, but bases an opposition entirely on the premise that no prejudice resulted from those deficiencies. Accordingly, the Petitioner submits that an Order for Discovery is warranted to determine whether prejudice did, in fact, result from counsel's defective actions and requests an evidentiary hearing on the matter. A Motion to this effect is being submitted contemporaneously with this Answer.

-1-

OVERVIEW

The Petitioner has a motion currently pending in the above
styled criminal and civil actions pursuant to 28 U.S.C. § 2255
wherein he sets forth the claim that his guilty plea was entered
involuntarily and unknowingly. He further asserts that his
sentence was therefore tainted with constitutional deficiencies
as well.

On September 16, 2013, the Government filed a Response in
Opposition to the 2255 Motion (Crim. Doc. 67.) The copy afforded
to the Petitioner, however, was misdirected and returned to sender
as undeliverable.

On October 15, 2013, this Honorable Court granted the
Petitioner an extension of thirty (30) days in which to respond
to the Government's Response. (Doc. 69.)

Each of the Respondent's assertions of fact and citations
of law are discussed below in the order they appear in the Response.

FACTUAL DISPUTES

As an initial matter, the Petitioner notes for the record
that a number of factual assertions appear to remain in dispute
and may be pertinent to the disposition of this matter. In so

-2-

doing, the Petitioner further notes for the record that the instant action raises a claim that the guilty plea and related plea agreement were both products of counsel's constitutional deficient performance and are therefore invalid. The plea agreement, therefore, cannot be relied upon as conclusive evidence without additional support.

"In 2004, Petitioner formed SalMar Investors Group, LLC to pursue various real estate ventures." (Response at 1.) The Petitioner disputes this assertion. (Memorandum In Support at 4.) SalMar was formed by 14 individuals, including the Petitioner to participate in a single real estate venture. (Plea Agreement at 2.) Only $30,000 went to SalMar from a single MetLife client (PSI at ¶11) and that amount was repaid on June 30, 2007. Petitioner was not the conceiver or driver of this project. (Exhibit 1, attached hereto. Copy of PSI with notation written by defense counsel in margin.)

"Petitioner incurred millions of dollars of debt as a result of those ventures and exhausted his personal wealth to keep them operating." (Response at 1.) Petitioner disputes this assertion. He did not file bankruptcy until 2009. He lost his personal wealth as a result of legal actions taken by others in response to the claims of MetLife. Those claims were filled with half-truths, distortions, and inflammatory rhetoric not supported by the evidence. (See, Bankruptcy 2:10-BK-51717, E.D. Tenn. Greeneville (2009)).

-3-

As of October 2007, no investor had lost any funds from the accounts identified by the Petitioner. Banking records taken by MetLife included funds moving both into and out of clients' accounts. Allegations made by the prosecution totals only money moved out of those accounts, but not the funds that were tranferred back into them. Funds that had not been returned to individuals, whether to a MetLife account or to another account owned by that individual include values that will be determined in litigation. (See, MetLife v. Triple S. et. al., (Sullivan County, Tennessee.)

"Petitioner falsified documents to facilitate wire transfers of client funds and invested that money in real estate ventures without their knowledge or authorization." (Response at 1-2.) In the instant matter, Petitioner asserts that he informed his attorney that he had verbal instructions from each of the individuals whose funds were transferred out of MetLife accounts to place the investments where he believed they would yield the highest rate of return, with the greates degree of safety and/or those clients acquiesced to that transfer when notified immediately following the transfer. (Memorandum in Support at 8.) This claim was not disputed by the Respondent.

In addition to the foregoing, each transaction automatically generated a confirmation statement at MetLife's service center

-4-

that was mailed directly to the client. Petitioner had no ability to altar these documents or prevent them from being generated. Additionally, individuals received monthly, or at least quarterly, statements from MetLife; again, a process Petitioner had no control over.

The Respondent incorrectly identified one of Petitioner's contentions as a claim that "some of the stipulated loss amounts resulted from alegedly erroneous payments by MetLife's insurance carrier." (Response at 5.) To correct the record, the payments in question were made by "Petitioner's Errors and Omissions insurance carrier." (Memorandum in Support at 19.)

## STATEMENTS OF FACT TO WHICH THERE IS NO DISPUTE

1.   Mr. Salyer's managing director at MetLife introduced him to the individuals who initiated the Harmony Project. SalMar Investors Group, LLC. was formed by numerous individuals to participate in the Harmony Project. (Memorandum in Support at 4 - 5.)

2.   Dan Rawls did not maintain any accounts with MetLife; he made personal investments into SalMar of his own volition. (Id.) Yet, although he was not a victim in the above styled criminal action, he was allowed to allocute at sentencing and argue for a higher sentence.

-5-

3.    When presented with the Government's proposed plea agreement, Mr. Salyer objected to a number of inaccuracies contained therein, including: (1) the claim that he diverted funds without the clients' permission; (2) alleged loss amount double-counted funds moving out of and back into clients' accounts; (3) the claim that he wrote checks payable to himself totaling $620,500; and (4) the stipulated loss amount. (Id. at 7 - 10.)

4.    Counsel's response was (1) no documents could be subpoenaed from MetLife, and (2) all loss amounts alleged by the government counted against him under the Guidelines, even if the withdrawal was on the client's behalf or repayed to the client before October of 2007. (Id. at 10.)

5.    Counsel advised that Petitioner's only option was to accept the plea offer or stand trial. (Id.)

6.    Although he was requested to do so by his client, counsel refused to object to the PSI guideline calcuation where it (1) included money that had been reimbursed to investors prior to October 2007, (2) included approximately $1 million in interest in the loss calculation, (3) included funds that were never moved out of MetLife accounts, and (4) enhanced his offense level for involving more than 10 victims. (Id. at 11 - 12.)

-6-

DISCUSSION

The Petitioner notes for the record that the Respondent grouped some of the grounds raised into single arguments rather than answering each claim individually. To avoid confusion, the discussion below will address the arguments as they were presented in the Response. Any assertions of fact in the original Motion for Relief and/or Memorandum in Support that was not specifically denied by the Respondent is presumed to be conceded.

A.    Determination of prejudice from counsel's failure to subpoena documents cannot be determined without an evidentiary hearing.

The Respondent does not deny that counsel failed utterly in making any attempt whatsoever to obtain documents that were converted by MetLife from Petitioner's private office without a warrant. (See, Ground One; Supplemental Pleading at 2-4.) It is the Respondent's position that, because the Petitioner did not state the specific documents that should have been subpoenaed, he has failed to prove prejudice from counsel's failures.

As an initial matter, Petitioner clearly stated that he informed counsel, "MetLife was in possession of all of his records which detailed each transaction he made on his client's behalf."

-7-

(Memorandum in Support at 20.)

Nevertheless, the documents that were necessary for counsel to adequately investigate the allegations against Mr. Salyer, and - equally important - necessary for him to make an educated recommendation regarding a stipulation of loss amounts, included: (1) records of transactions for each account maintained by an alleged victim named in the indictment, and (2) records of transactions for Horizon Holdings, Inc. and SalMar Investors Group, LLC. from the Regions Bank in Kingsport, Tennessee.

These records show actual amounts of funds repaid to investors prior to October of 2007 that could not be counted as loss. As such, they would demonstrate that (1) some of the stipulated loss amount involved money that was not actually transferred out of MetLife accounts; (2) some of the stipulated loss amount reflected double counting of the same money; (3) money transferred to the Petitione was offset by deposits made by Petitioner; (4) some of the stipulated loss amount resulted from erroneous payments by Petitioner's insurance carrier and MetLife's subsequent claim as loss of those amounts paid; and (5) individuals received financial value from the investments into which Petitioner transferred their funds. (Memorandum in Support at 19-20.)

-8-

Further, the results of the ongoing case in <u>MetLife v. Triple</u>
<u>S. et. al.</u>, in Sullivan County, Tennessee will deterimine the value
of any membership interest held by any member of any entity. If any
member or owner in any entity suffered a loss, Petitioner would assert
that loss occurred after October 2007 and was the result of the actions
of MetLife.

Accordingly, the Petitioner respectfully submits that, whereas
the Respondent has conceded counsel's constitutionally deficient
performance in the failure to research the most crucial documents
related to the charges against his client, an evidentiary hearing
is necessary to determine the extent of prejudice suffered by Mr.
Salyer.

B.  The current record contains enough evidence of errors
    in the loss calculation to undermine confidence in the
    amount of loss attributed to Mr. Salyer resulting from
    counsel's constitutionally deficient assistance.

As an initial matter, because the guidelines for economic
crimes are driven by monetary factors, the first challenge defense
attorney's face is to ensure that those figures are accurately
calculated. For this reason, it was incumbent on counsel to determine
the exact point in time when loss was said to have occurred.
It has always been the Petitioner's contention that no funds were

lost whatsoever as of October of 2007.

Further, it is counsel's responsibility to ensure that the figure proposed by the government and the PSI does not count the same money twice. The record in this instance is replete with such occurrences. (See, Exhibit 2.) The fact that Petitioner's attorney did not conduct even a cursory review of the loss amounts claimed by the prosecution indicates that many such occurrences are present in the documentation that was neither requested by counsel or provided by the prosecution during the pretrial discovery phase. Counsel therefore recommended acceptance of a plea agreement containing a stipulation without first conducting any research whatsoever into its validity.

Defense counsel in fraud cases also need to ensure that losses that were not caused by the fraud do not affect the guideline offense level. See, United States v. Rothwell, 387 F.3d 579 (6th Cir. 2004). Due to the inherent fungibility of money, Respondent's claims of one client's funds being used to pay others (Response at 2) are incredible. While the Respondent refers to funds paid to others, they refuse to acknowledge that the bank statements of those individuals' accounts would bear out Petitioner's assertion that the payments were nothing more than funds which had been invested for individuals being returned to those same individuals,

-10-

either into their own bank account, their MetLife account, or
another account they designated. Each and every one of these
transfers being tracked, documented, and accounted for. All of
those records being among the property converted by MetLife.

With respect to the interest that was added by the PSI into
the loss calculation and is disputed by the Respondent, the Petitioner
urges consideration of the paragraphs initially cited in the Memorandum
in Support of his motion. Paragraph 20 of the PSI notes specifically,
"An additional 557,062.37 in prejudgment interest was ordered,
for a total of 6,284,819.37." Paragraph 24 states, "Based on
the above information, the defendant will be held acountable for
a loss in the amount of 6,807,434.81."

In general, only losses to victims that are directly caused
by fraud are included in loss. Consequential damages, such as
"[i]nterest of any kind, finance charges, late fees, penalties,
amounts based on agreed-upon return or rate of return, or other
similar costs," are not included. U.S.S.G. § 2B1.1, Appl. Note
3(D)(i).

In short, the Respondent once again does not deny that counsel
provided constitutionally deficient assistance to Mr. Salyer,
but argues instead that he suffered no prejudice from those failings.

The Respondent argues that, because Mr. Salyer has not provided specific documentation to demonstrate the loss calculation is in error, he is unable to prove that he suffered any prejudice under Strickland.

The reverse must also then be true: If records demonstrate that money was reimbursed to investors, that investments made by the Petitioner retained assets at the time charges were lodged against him, and that interest was included in the loss amounts used to form the base offense level, counsel provided constitutionally deficient assistance in not bringing these facts to the Court's attention, and Mr. Salyer's sentence was improperly enhanced as a result.

The Petitioner respectfully asserts that the loss calculation could only have produced a reliable offense level after taking into consideration (1) financial transaction statements of the accounts held by Horizon Holdings and SalMar Investors Group, LLC at the Regions Bank in Kingsport, Tennessee; (2) financial transactions in MetLife accounts for each of the alleged victims; and (3) holdings of Triple S Horizon in Sullivan County. And, the calculation should not have included $1 million in interest.

Accordingly, the Petitioner respectfully submits that counsel

-12-

should be appointed to obtain documents related to these matters and an evidentiary hearing scheduled to consider same.

      C.    The Respondent's position on the number of victims
            is not supported by legal precedence.

The Respondent relies on <u>United States v. Yagar</u>, 404 F.3d 967 (6th Cir. 2005) and its progeny as support for the contention that each individual account holder of MetLife named in the instant action is appropriately considered as a victim under the guidelines. According to the logic employed by the Respondent, each individual "suffered lost growth opportunities in their retirement and investment accounts" over a period of several years. (Response at 9.) This statement has no bearing on the definition of a victim as set forth in this circuit. "When a customer of a bank or credit card company is defrauded, the customer is generally protected by an agreement that the bank or company will handle any fraud based upon unauthorized charges against the customer's account." <u>United States v. Erpenbeck</u>, 532 F.3d 423, 442 (6th Cir. 2008). As <u>Yagar</u> points out, a loss under this type of contractual agreement is necessarily temporary, and the only victim of fraud under these circumstances are the guarantor of the account, not the customer. <u>Id</u>.

-13-

Under Sixth Circuit precedence, a person or entity must be required to take action to be reimbursed in order to be considered a victim. See, United States v. Stubblefield, 682 F.3d 502, 511-12 (6th Cir. 2012)(citing Erpenbeck); United States v. Munar, 419 Fed. Appx. 600, 614 (6th Cir. 2011)(unpublished)("[W]e also decline the Government's invitation to apply ... a First Circuit case that expressly disapproved of Yagar, in which, unlike the instant case, the district court had before it 'declarations of victim losses' that supported that the individuals suffered actual economic harm despite being reimbursed for their losses.")

D.    Counsel's ineffectiveness regarding the securities
      law violation enhancement

The Respondent's position on this ground misstates the issue raised by the Petitioner and relies on factual assertions that are currently in dispute.

As an initial matter, Mr. Salyer does not dispute the fact that he conducted business outside the scope of his employment with MetLife. The Respondent's alteration to his statement - the addition of the phrase "purportedly false" - therefore appears to be intentionally misleading. On the contrary, Petitioner's claim is that he filed the requisite disclosure of outside business

-14-

on any such activity and that it was in accordance with securities laws.

With respect to the remainder of the Respondent's argument on this ground - that he forged client signatures, that he lied to his clients regarding the nature of the investments, and that he produced fraudulent account statements - the Petitioner incorporates the foregoing sections on factual disputes and statements of fact to which there is no dispute by reference as if fully restated herein. The Respondent's reliance on the PSI and/or the plea agreement is misplaced whereas the validity of each is brought into question as a result of counsel's ineffectiveness.

E.    Absent counsel's constitutionally deficient advice, Mr. Salyer would have entered a plea of guilty only to the substantive offenses charged.

The crux of Petitioner's claim on this ground is that he concedes that he would have entered a plea of guilty to the substantive offenses charged in counts one through three in the superseding indictment without agreeing that any individual lost any money as a result of the breach of federal statutes. Had he been aware of the option, Mr. Salyer would have required the prosecution to prove that any losses were experienced whatsoever.

-15-

It is the Respondent's position that by pleading without a written agreement, the Petitioner may have lost his one-level reduction to the guideline sentencing range for accepting responsibility.

The ultimate question under Strickland and Hill v. Lockhart, 474 U.S. 52 (1985) is whether the defendant has "established the reasonable probability that he would not have entered his plea but for his counsel's deficiency." Premo v. Moore, 131 S.Ct. 733, 744 (2011)(emphasis added). The issue here is not whether counsel was competent in his assessment and advice regarding the likelihood of conviction, but rather in advising that there were any benefits to excepting a plea agreement that contained factually incorrect stipulations. See, Griffin v. United States, 300 F.3d 733, 737 (6th Cir. 2003)(noting that it is "easier to show prejudice in the guilty plea context" than in other contexts "because the claimant need only show a reasonable probability that he would have pleaded differently").

In Hill, the Court stated that "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence

-16-

would have led counsel to change his recommendation as to the plea." 474 U.S. at 59.

CONCLUSION

Wherefore, for the foregoing reasons, the Petitioner respectfully submits that counsel's deficient performance has been conceded by the Respondent and an evidentiary hearing is therefore warranted to determine the extent of prejudice suffered by the Petitioner.

Respectfully submitted,

Dated: 11/15/2013

Mark Salyer, pro se
43560-074 FCI Beckley
P.O. Box 350
Beaver, WV 25813

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that a true and correct copy of the foregoing has been placed in the institutional mailbox, appropriate postage prepaid and addressed to:

AUSA
U.S. Courthouse
220 W. Depot Street
Greeneville, TN 37743

on this, the 15th day of November, 2013.

Mark Salyer, pro se

-17-

E X H I B I T

1

Copy of Presentence Investigation Report
with annotations in margin by attorney Dan Smith

Due to security restrictions implemented by the Bureau of Prisons, Exhibit 1 will be submitted under a separate cover and mailed directly from the office of the Case Manager responsible for maintaining sensitive documents related to the instant criminal action.

E X H I B I T

2

Table of discrepancies currently on the record
in the above styled criminal action

| Date | Document | Individual | Amount | Comment |
|---|---|---|---|---|
| 5/3/07 | Plea Agreement | Paul Clark<br>Ruby Clark | $100,000<br>100,000 | Same amounts listed on page 3 and 4 |
| 1/31/06<br>3/28/06<br>2/08/06 | Plea Agreement<br>"""<br>""" | Maxine Lewis<br>"""<br>""" | 50,000<br>50,000<br>20,000 | $64,500 returned to her at her request between 8/21/06 and 9/27/07. (Info from Ex.1, PSI w/notes.) |
| 11/28/05<br>1/12/06<br>3/03/06 | Plea Agreement<br>"""<br>""" | Tony & Edna Pifer<br>""" | 50,000<br>30,000<br>50,000 | 6/30/07: repaid $30k to Tony Pifer at his request. These were the only funds sent to SalMar. 6/22/07: cashier's check to pay Edna Pifer's car loan. (Ex.1, PSI w/notes.) |
| 10/11/07<br>08/06/07 | 1st Sup. Indictment<br>Count 41<br>Count 101 | "PH"<br>"PH" | 10,000<br>45,000 | In Dkt. 2:10-ap-05098 (E.D. Tenn) PH filed an affidavit stating she never received any money. (R.40, #2) |
| 05/10/08 | Count 59 | Payment | 22,000 | This was a loan made by Horizon Holdings. Metlife instructed the borrower he is under no obligation to repay the loan. |
| 05/05/06<br>05/05/06 | PSI ¶21<br>Indict.<br>(Bet. 71 &<br>72) | Larry Bishop<br>Larry Bishop | 135,000<br>109,500 | This is listed in the PSI and indictment (but not as a specific count) and not a stipulation in the plea. There is no explanation for the inclusion of this person or the differing amounts. |

NOTES ON THE TABLE

1.    Paul Clark

        In the plea agreement, page 3 lists: Paul Clark $100,000
on August 3, 2007, Ruby Clark $100,000 on August 3, 2007.    Page
4 of the plea agreement lists Paul and Ruby Clark $100,000 each
on August 3, 2007.    The Superseding Indictment also lists, in
Count One, Paul and Ruby Clark $100,000 each on August 3, 2007;
and, in Count Ninety-eight: Ruby Clark $100,000 on August 3, 2006
and , in Count Ninety-nine: Paul Clark on August 3, 2006.

2.    Maxine Lewis

        The $64,500 returned to Maxine Lewis were only the funds
returned to her where the records were obtainable at the time.
This individual, like many others, received funds directly from
their individual investments.    The records of these were converted
by MetLife from the office of Mr. Salyer.

3.    Tony and Edna Pifer

        On 6/22/07 a cashier's check for $8,484.99 made payable to
Financial Services, Inc. for the benefit of Edna Pifer was issued
to pay off an existing car loan so she could obtain the title.
The plea agreement lists Tony and Edna Pifer $8,500 on 7/27/07.
The First Superseding Indictment, as part of Count One, lists
Anthony Pifer $8,500 on 7/27/07.    As part of Count Two, it lists
Edna Pifer for the same amount on the same date.    This $8,500
on 7/27/07 was caused by the individual replacing the funds
withdrawn on 6/22/07 with the proceeds from the sale of her car.

        The Lewis and Pifer examples are no different than numerous
others.    They are used in this instance because the handwritten
notes in the margin of the PSI demonstrates counsel's awareness
of the discrepancy and other similar transactions.

4.    "PH"

        The information included in the First Superseding Indictment
and the information included in the Affidavit of PH, submitted
in a separate matter under oath, are mutually exclusive and cannot
both be correct.

5.    Payment to Lanscaper

        These funds were a loan to this individual to cover his

-2-

company payroll. After the media began reporting the unfounded allegations of MetLife, that individual refused to repay the loan, claiming MetLife had told him he had no obligation to repay. SUpporting documents in this matter are in the possession of the James A.H. Bell law firm.

-3-