UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| MARK EDWARD SALYER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:11-cr-04 |
| | ) | (2:13-cv-113) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION**

Petitioner, Mark Edward Salyer ("Salyer"), was charged in an indictment with two counts of wire fraud and 103 counts of money laundering.[1] All the charged offenses were committed while he was an employee of MetLife Securities ("MetLife") and responsible for individual retirement and brokerage accounts of numerous individuals. Essentially, Salyer was charged with appropriating money belong to his clients, either by forging the clients' names on MetLife forms, or by making fraudulent representations to induce his clients to agree to transfer their funds into his investment schemes.

Salyer retained an attorney, Dan R. Smith. On September 13, 2011, Salyer entered into a plea agreement with the United States in which he pled guilty to one count of wire fraud, and one count of money laundering.[2]

In the plea agreement, Salyer stipulated that the loss involved at least ten victims and that the amount of loss was between 2.5 million and 7 million dollars.[3] Indeed, the plea agreement

[1] Indictment, Doc. 15
[2] Plea Agreement, Doc. 32
[3] Doc. 32, ¶ 7

lists thirty-six different people whose funds held in various accounts at MetLife Securities were diverted by Salyer to his own benefit by forgery and other artifices.

Based on these stipulations, and this Court's finding that his conduct violated the securities law, his total offense level was determined to be 31.[4] His criminal history category was I. As a result, his advisory guideline range was 108 to 135 months' imprisonment.[5]

On May 2, 2012, the Court sentenced Salyer to 108 months of imprisonment, the bottom of his guideline range, and he was ordered to pay restitution in the amount of $6,713,364.37.[6]

Salyer has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Doc. 60. That motion has been referred to the Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. 636 and Rule 8(b) of the Rules Governing Section 2255 Proceedings.[7] For the reasons discussed in the following paragraphs, it is recommended that Salyer's motion be denied.

Salyer asserts his retained attorney was ineffective during plea negotiations and at his sentencing. Specifically, he claims that Attorney Smith (1) provided incorrect advice regarding the manner in which "loss" is calculated under the Sentencing Guidelines; (2) failed to advise him that he had the option of entering an "open plea of guilty," i.e., pleading guilty to the indictment; (3) failed to subpoena documents from MetLife before recommending to Salyer that the plea agreement be accepted; (4) failed to object to the enhancement to the base offense level attributable to the number of victims and the violations of the security laws; (5) failed to object to the addition of interest to the amount of the losses; and (6) failed to object to the amount of

[4] PSR, ¶ 29-38
[5] PSR, ¶ 59
[6] Judgment, Doc. 55
[7] Doc. 74

restitution. In essence, Salyer is claiming that Attorney Smith was ineffective by failing to show that Salyer did not steal as much money as he stipulated in the plea agreement.

To obtain any relief from under 28 U.S.C. § 2255, a petitioner must show an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994). To obtain relief for a non-constitutional error, the petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994).

A § 2255 petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, he must establish, by identifying specific acts or omissions, that his attorney's performance was deficient and that he did not provide "reasonably effective assistance." *Id*. Second, the Petitioner must show "a reasonable probability, but for [his attorney's deficient acts or omissions], the result of the proceedings would have been different." *Id*. at 694.

An attorney's performance is measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). An attorney is presumed to have provided effective assistance, and the petitioner has the burden to show otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003).

Although a § 2255 petitioner's burden to establish entitlement to an evidentiary hearing is light, *Turner v. United States*, 183 F.3d 474, 477 (6th Circuit 1999), no hearing is required if "the motion and the files and records of the case conclusively show that the petitioner is entitled to no

relief." *Blanton v. United States*, 94 F.3d 227, 235 (6th Circuit 1996). After reviewing the pleadings filed by Petitioner and the government; the transcripts of his change of plea hearing and the sentencing hearing; and the additional documents incorporated into this record from the civil action filed against him by the Securities and Exchange Commission in 2008,[8] this Magistrate Judge reports that those records and documents conclusively indicate that Salyer is entitled to no relief and that no evidentiary hearing is warranted.

In ¶ 4 of the plea agreement, Salyer acknowledged that: (1) as an employee of MetLife Securities, he was responsible for determining the investment strategies for IRA and brokerage accounts of numerous clients in upper East Tennessee; (2) in 2004, Salyer and other individuals created limited liability companies to purchase thousands of acres of Alabama land; (3) Salyer was the chief manager of one of those limited liability companies, SalMar Investors Group ("SalMar"), and he was president of another, Horizon Holdings; (4) he falsified clients' documents which caused those clients' funds to be withdrawn from existing investment accounts and placed with Horizon Holdings; (5) those funds were then used to pursue various real estate ventures in which Salyer had an interest; and (6) Salyer forged his clients' names on the forms necessary to facilitate a reallocation of their monies, and he also provided those clients with falsified account statements to conceal his fraudulent activities.

Paragraph 4 of the plea agreement also lists the names of thirty-six people whose money was diverted by Salyer to his own investments, as well as the amount of money stolen from each. The grand total of those amounts is $6,413,105.94.

At the change of plea hearing on September 28, 2011, the District Judge asked Salyer if he had read the indictment and discussed it with his attorney, and Salyer answered that he had. He then acknowledged that his lawyer was fully aware of *all the facts* upon which the charges

[8] *Securities and Exchange Commission vs. Mark E. Salyer*, 2:08-CV-179

were based, and Salyer again answered "yes."[9] A few minutes later, Salyer said that he had read the plea agreement and that he understood it.[10] He also stated that he understood he had the right to subpoena witnesses.[11]

When the District Judge asked if he was satisfied with Attorney Smith's representation, he answered that he was.[12] He then acknowledged that he understood that his sentence would be based on a presentence report prepared by the United States Probation Office, *that he had right to object to any of the facts in that presentence report,*[13] and that the Court would order Salyer to pay restitution to any victims of his fraudulent conduct.[14]

For the purpose of the Court determining his guideline range, Salyer agreed that the total loss to victims was no less than 2.5 million dollars and no more than 7 million dollars.[15]

On March 15, 2012, the United States Probation Office prepared its presentence report. Among other things, it recited that Salyer as an employee of MetLife was responsible for investment strategies with numerous people in Northeast Tennessee; that in 2004, he formed SalMar Investors Group, LLC to purchase thousands of acres of Alabama land; Salyer was designated the chief manager of SalMar Investors Group, LLC; and from 2005 through 2007, in order to finance SalMar's investments in Alabama, Salyer knowingly and inappropriately diverted over 6 million dollars from his clients' IRA and brokerage accounts by forgery and falsification of documents in some instances, and in other instances by making false representations to his clients.

[9] Doc. 77, pgs. 4-5
[10] Doc. 77, p. 8
[11] Doc. 77, p. 9
[12] Doc. 77, p. 8
[13] Doc. 77, p. 20
[14] Doc. 77, ¶ 10, p. 7
[15] Doc. 77, ¶ 7, pgs. 6-7

The presentence report then listed the names of thirty-four clients who had been defrauded by Salyer, along with the amounts converted by him which totaled $6,413,105.94.

At his sentencing hearing on April 20, 2012, Salyer answered in the affirmative when the District Judge asked him if had read the presentence report and discussed it with his attorney.[16] Notwithstanding he knew from his change of plea hearing that he had a right to object to any facts set out in the presentence report, Salyer said nothing. After listening to a number of Salyer's client-victim's allocute regarding the effect Salyer's fraud had upon them and their families, the District Judge again turned his attention to Salyer himself. Salyer told the Court that he was "deeply sorry and remorseful" for his actions, that he "made a horrible mistake, and [he was] deeply sorry for it."[17]

At this juncture, it is appropriate to point out that Salyer was not some poorly-educated, bewildered defendant enmeshed in the gears of the federal judicial system. He is extremely intelligent and highly educated, having both a bachelor's and master's degree.[18] Moreover, this criminal prosecution was not his first exposure to allegations that he had stolen his clients' funds; as mentioned previously, the Securities and Exchange Commission sued him in this Court in 2008 seeking a disgorgement of the funds he obtained from those fraudulent activities which ultimately resulted in his indictment in this case.[19] In that case, as in this one, Salyer was represented by attorney Smith. It is undeniable that Salyer knew from 2008 onward what was going on, and why.

At his sentencing hearing, he had ample opportunity to voice his disagreement not only with the facts set out in the presentence report, but also the essentially identical facts set out in

---

[16] Doc. 78, p. 2
[17] Doc. 78, p. 34
[18] Change of plea hearing; Doc. 77, p. 4
[19] *Securities and Exchange Commission v. Mark E. Salyer*, 2:08-cv-179

the plea agreement. Also, he told the interviewing probation officer that he agreed with the factual basis of the plea agreement.[20]

To repeat, at his change of plea hearing, Salyer told the Court that he had read the plea agreement and had discussed it with his lawyer.[21] He stated that he was satisfied with Attorney Smith's representation. He now says otherwise in direct contravention of what he told the Court earlier. To allow Salyer to recant those sworn statements would amount to allowing him to ambush the Court.

Salyer is bound by both his explicit and implicit statements made to the Court during his change of plea and sentencing hearings. *Blackledge v. Allison*, 431 U.S. 63 (1997). To hold otherwise would lend the Court's imprimatur to the practice of a defendant providing false answers under oath during plea colloquies, *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.), *cert. denied*, 528 U.S. 847 (1999), and render a trial judge's questions to a defendant to confirm that a plea of guilty is knowing and voluntary a meaningless and futile exercise.

The indictment listed the names of Salyer's victims and the amounts of their funds he fraudulently diverted to his own ends. So did the plea agreement, and so did the presentence report. Salyer not only never disputed the victim-status of any of these individuals named in these documents, he never disputed the amounts of their monies he diverted. Contrary to what he told the District Judge in his change of plea and sentencing hearings, he now seeks to dispute both. He should not be allowed to do so. [22]

---

[20] PSR, ¶ 27

[21] Doc. 77, p. 8

[22] It is important to recall that the S.E.C.'s suit against Salyer, which was filed in 2008, identified Salyer's victims and the amount of their funds he diverted to his own ends. He cannot legitimately argue that he declined to voice his disagreement with the facts in the plea agreement and presentence report during the hearings before the district judge because he was caught by surprise by those factual recitations.

What has just been stated is more than enough to dispose entirely of Salyer's motion. However, a brief discussion of three specific issues he raised in his motion perhaps is in order. He says that since some of his clients were reimbursed by MetLife for their losses, there were not at least ten victims as he stipulated in his plea agreement, relying on *United States v. Yagar*, 404 F.3d 967, 971)6th Cir. 2005), which holds that defrauded credit card holders who are fully reimbursed for temporary losses are not "victims." However, *Yagar* noted that its ruling applies to losses which are short-lived and promptly repaid by a third party; that was clearly not the situation in Salyer's case. His victims were not repaid for years. Moreover, as at least two of his victims pointed out during the sentencing hearing, the Internal Revenue Service has penalized Salyer's victims for withdrawal of funds from their accounts which Salyer did without their knowledge.[23] To put it bluntly, the Internal Revenue Service apparently considers the withdrawals to be taxable events notwithstanding they were accomplished only as a result of Salyer's fraud. Salyer's case is not even remotely similar to *Yagar*.

Salyer argues that his attorney was ineffective because he failed to advise him that he had the right to plead guilty without a plea agreement. To be sure, Salyer could have pleaded guilty to the 105-count indictment, and it perhaps would not have increased his guideline range. But neither would it have decreased it. However, it undeniably would have resulted in an additional $10,500 in special assessments taxable to Salyer. Attorney Smith hardly should be criticized for failing to advise Salyer that he had a right to pursue a course of action which would have been counter-productive from his standpoint.

Salyer complains that his conduct did not violate the securities laws and therefore the Court should not have enhanced his sentence based on that basis. But by forging his clients' names on MetLife forms to effect transfers of their funds, and by sending them fake reports

[23] Sentencing hearing, Doc, 78, pp 25, 28-29.

regarding their investments, Salyer violated 15 U.S.C. §77q(a) and 10(b), 15 U.S.C. §78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

Salyer filed a "Motion for Discovery and Other Relief," Doc. 70. In that motion, he asks that a lawyer be appointed for him, and that he be granted an evidentiary hearing on his § 2255 motion; and that the Court issue subpoenas to: MetLife for all transactions of each account of every victim named in the indictment; to Regions Bank for records of all transactions of Horizon Holdings and SalMar Investors Group; to MetLife for all assignments "and supporting documents" which were provided to individuals to obtain those assignments; and presumably to MetLife for documentation of the amounts paid by MetLife to any victim listed in the indictment.

As discussed earlier, this Magistrate Judge is of the opinion that no evidentiary hearing is warranted. It follows that he is not entitled to the appointment of an attorney,[24] from which it further follows that the materials for which he requests subpoenas are irrelevant to the disposition of his § 2255 motion.

In conclusion, it is reported that Salyer is not entitled to an evidentiary hearing, and therefore he is not entitled to the appointment of an attorney or the discovery he requests. It is further reported that Salyer's motion to vacate, set aside or correct his sentence has no merit. Therefore, it is recommended that Salyer's motion for discovery, etc., Doc. 70, be DENIED, and that his motion to vacate, set aside, or correct his sentence, Doc. 60, be DENIED.[25]

Respectfully submitted,

s/Dennis H. Inman
United States Magistrate Judge

[24] Rule 8(b), Rules Governing Section 2255 Proceedings

[25] Any objection to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 USC §636(b)(1).