UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MARK EDWARD SALYER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Nos. 2:11-CR-04-JRG<br>2:13-CV-113 |

## MEMORANDUM AND ORDER

Petitioner, Mark Edward Salyer ("Salyer" or "petitioner"), a federal prisoner confined in the Satellite Prison Camp in Beckley, West Virginia was convicted, pursuant to his guilty pleas, of one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957. For these offenses, petitioner was sentenced to a total of 108 month's imprisonment, [Doc. 55].[1] Thereafter, petitioner filed a *pro se* motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, which was referred to the United States Magistrate Judge for a Report and Recommendation ("R&R"), [Doc. 60, 74].

That R&R, dated April 18, 2016, is now before the Court for consideration, [Doc. 82]. The Magistrate Judge recommends that petitioner's motion seeking discovery, [Doc. 70], be denied and that, likewise, his motion to vacate, [Doc. 60], be denied. Petitioner has filed objections to the Magistrate Judge's R&R, arguing that, contrary to the Magistrate Judge's recommendation, he received ineffective assistance of counsel in several instances, principally

---

[1] Document citations in this order refer to the docket in the underlying criminal case, No. 2:11-CR-04.

1

with respect to the loss calculations upon which his guidelines sentence was based, [Doc. 82]. The government has not responded to the objections.

Rule 72(b) of the Federal Rules of Civil Procedure provides in part that, "a party may serve and file *specific* written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b) (emphasis added). "Objections disputing the correctness of the Magistrate's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient." *Stamtec, Inc. v. Anson*, 296 Fed. App'x 518, 520 (6th Cir. 2008) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)).

A court must conduct a de novo review of those portions of a magistrate judge's report and recommendation to which a party objects unless the objections are frivolous, conclusory, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local* 231, 829 F.3d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A party objecting to a R&R has a "duty to pinpoint those portions of the magistrate's report that the district court must specifically consider." *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp.2d 1145, 1152-53 n. 7 (E. D. Tenn. 2007) (quoting *Mira*, 806 F.2d at 637). A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

In the main, petitioner's objections are not specific and constitute simple reiterations of his arguments as to why he should be granted relief on his § 2255 motion. Even so, after a careful review of petitioner's document stating his objections, which at certain points refers to parts of the Magistrate Judge's R&R, this Court discerns that he is making the following objections:

## I. Credibility Determinations/Evidentiary Hearing

Petitioner maintains that he is entitled to an evidentiary hearing because the record is incomplete and must be expanded and because there are disputed facts between the parties' "in and out of the record," [Doc. 82 at 2]. Petitioner cites to page 4 of the R&R where the Magistrate Judge reported that the record and documents filed in this case conclusively indicated that § 2255 relief and an evidentiary hearing were unwarranted, asserting that these conclusions were based on credibility findings.

The Magistrate Judge made no such findings. Judge Inman referenced the plea agreement wherein petitioner acknowledged that, as an employee of a securities firm, he had been responsible for determining numerous clients' investments strategies for IRA and brokerage accounts and that he had falsified clients' documents, causing funds to be withdrawn from their account; placed those funds with limited liability companies he had set up with others; used those funds to pursue various real estate ventures in which he possessed an interest; had forged his clients' names on the forms necessary to facilitate a relocation of their monies; and provided those clients with falsified accounts statements to conceal his fraudulent activities.

The Magistrate Judge noted that the plea agreement also listed the names of 36 individuals whose money was diverted by petitioner to his own investments and the funds from each, which totaled $6,413,105.94. Petitioner had agreed, so Judge Inman pointed out, that his offenses involved a total loss of between 2.5 million dollars and 7 million dollars.

The Magistrate Judge recounted pertinent parts of petitioner's plea colloquy with the Court wherein he had affirmed, under oath, that he had read and discussed the indictment with counsel, that he had read and understood the plea agreement, that counsel was aware of all the facts upon which the charges were based, that he was satisfied with counsel's representation, and
3

Case 2:11-cr-00004-JRG-DHI   Document 83   Filed 06/28/16   Page 3 of 11   PageID #: 522

that he knew that he had a right to object to the presentence report, which would be prepared and upon which would be based his sentence.

Next, the Magistrate Judge reviewed the presentence report which contained essentially the same facts as the plea agreement and likewise listed the names of the 36 clients who were victims of petitioner's fraudulent conduct along with the amount of stolen funds. Finally, the Magistrate Judge noted that, at the sentencing hearing, petitioner had expressed remorse for his actions when he had the opportunity to allocute but had "said nothing" as to any inaccuracies as to the loss calculation in the presentence report even though he knew he had a right to object to any facts contained in the presentence report.

The Magistrate Judge then cited to *Blackledge v. Allison*, 431 U.S. 63 (1977), for its holding that a defendant is bound by both his explicit and implicit statements to the court during his change of plea and sentencing hearings. Concluding that petitioner's entire § 2255 motion essentially was constructed on his disputation of facts contained in the plea agreement, facts included in the presentence report, and facts acknowledged to be true, under oath, to this Court during the change of plea and sentencing hearings, the Magistrate Judge recommended that it was unnecessary to hold an evidentiary hearing and that the motion to vacate should be denied.

As can be seen from this detailed summary of the R&R, the Magistrate Judge merely reviewed the facts stipulated by petitioner and affirmed by him to the Court during hearings and then applied the clear rule in *Blackledge*. Petitioner has not pointed to any part of the R&R where the Magistrate Judge made a single credibility finding because, indeed, there is not one.

This objection is frivolous and is therefore OVERRULED.

## II.     Ineffective Assistance of Counsel—Open Guilty Pleas

Salyer claims that counsel was ineffective in failing to advise him that he could have pled guilty to all 105 counts of the indictment without a plea agreement. The Magistrate Judge's recommended findings with respect to the claim were succinct:

> Salyer argues that his attorney was ineffective because he failed to advise him that he had the right to plead guilty without a plea agreement. To be sure, Salyer could have pleaded to the 105-count indictment, and it perhaps would not have increased his guideline range. But neither would it have decreased it. However, it undeniably would have resulted in an additional $10,500.00 in special assessments taxable to Salyer. Attorney Smith hardly should be criticized for failing to advise Salyer that he had a right to pursue a course of action which would have been counter-productive from his standpoint.

[Doc. 79 at 8]. Petitioner objects to the Magistrate Judge's "glib statement," arguing that "had he pled straight up to the Indictment, he could have preserved his direct appeal."[2] He asserts that he had "several meritorious issues for direct appeal," all related to sentencing.

Petitioner's argument fails for several reasons. Although the record does not definitively establish whether counsel advised petitioner of his right to enter an "open" plea or plead "straight up" to the indictment, that does not mandate an evidentiary hearing to resolve the issue. Even assuming *arguendo* that counsel's performance was objectively unreasonable,[3] Salyer cannot show that he suffered any prejudice as a result. Petitioner maintains that he would have entered such a plea if he had been presented with that option. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that the *Strickland* test applies to advice given by counsel in the context of guilty plea discussions. *See id*. at 58. The Court also held that the prejudice prong in the context of the plea process "focuses on whether counsel's constitutionally ineffective

---

[2] Salyer's plea agreement contained a waiver of his right to a direct appeal except under very limited circumstances.

[3] But *see United States v. Faubion*, 19 F.3d 226, 229 (5th Cir. 1994) (failure of trial counsel to recommend open plea was "well within the bounds of adequate assistance" where open plea invoked no discernable advantage); *Diallo v. United States*, 2014 WL 4460364, at * 4 (S.D. N.Y. Sept. 10, 2014) (questioning whether trial counsel is obligated under Sixth Amendment to inform defendant of possibility of open plea.)

5

performance affected the outcome of the plea process." *Id*. To establish prejudice under such circumstances, the petitioner must show that he would have likely received a lesser sentence.

In his original filing, Salyer made no allegation of prejudice except for the conclusory statement that "absent these errors the outcome of the above styled criminal action would have produced a lesser sentence." [Doc. 62 at 17]. Apparently realizing the folly of that conclusory argument, petitioner raised for the first time in his objections to the R&R a claim that he would have preserved his right to raise "meritorious" issues on appeal that "could" have resulted in a "less harsh sentence." Aside and apart from the timeliness of this argument, the "meritorious" issues claimed by Salyer are, as shown below and in the R&R, undeniably without merit. Salyer cannot establish the necessary prejudice and this claim is without merit.

### III. Ineffective Assistance of Counsel—Failure to Subpoena Documents/Loss Calculation

Petitioner makes various claims in his petition related to the loss amount used to calculate his advisory guidelines range and faults his attorney for failing to object. Salyer also faults counsel for failing to subpoena documents from MetLife which, he asserts, will substantiate his objection as to the loss amount used to calculate his guidelines range.

Relying on Salyer's sworn statements and the factual stipulations contained in his plea agreement, the Magistrate Judge found Salyer to be bound by his under-oath admissions and statements. Salyer's plea agreement contained the agreement of the government and Salyer that "the amount of loss should be limited to more than $2,500,000 but less than $7,000,000 for the sole purpose of determining the defendant's advisory guideline range, § 2B1.1(b)(1)(J)." Petitioner signed the plea agreement, swore under oath at the change of plea hearing that he had read and understood the plea agreement, and, importantly, that the factual stipulation was true and correct. To allow Salyer to now disavow his plea agreement and his sworn statements would

6

be to make a mockery of petitioner's oath and "lend the Court's imprimatur to the practice of a defendant providing false answers under oath during plea colloquies." [Doc. 79 at 7] (citing *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.), *cert. denied*, 528 U.S. 847 (1999)).

Even if the Court were to credit Salyer's claim of ineffective assistance of counsel, he has not shown prejudice. Salyer's base offense level was increased by 18 levels pursuant to USSG § 2B1.1(b)(1)(J) which provides for the increase if loss was more than $2,500,000 but no more than $7,000,000 (the amount stipulated by petitioner).[4] Petitioner has made no effort to show that, even if all his alleged "inaccuracies" are accounted for, the total loss would have been $2,500,000 or less, resulting in a lower total offense level.[5] There is nothing in the Magistrate Judge's R&R and his recommended disposition on this issue which is contrary to law and this objection is without merit.

## IV. Ineffective Assistance Of Counsel—Number of Victims

Despite his stipulation that "the number of victims exceeds ten (§ 2B1.1(b)(2)(A))," Salyer now claims that "he noted to his attorney that [the six individuals listed as victims in paragraph 21 of the PSR] were not listed in the indictment and their entire investment remained with MetLife," [Doc. 62 at 11], and that some of the victims were reimbursed by MetLife. In essence, he argues that "MetLife reimbursed all of the Petitioner's account holders for the full value of their original deposit . . . Accordingly, there was only one victim in this instance." [*Id.* at 23]. Salyer relies on *U.S. v. Yagar*, 404 F.3d 967, 971 (6th Cir. 2005).

Although it was not necessary for the Magistrate Judge to address this claim in light of petitioner's stipulation and for the reasons set forth in the preceding sections, the Magistrate

---

[4] The probation officer calculated a loss amount of $6,807,434.81 and the Court adopted the PSR's calculation since there was no objection from Salyer.
[5] Salyer has produced none of the documents he claims are in his possession which show that the "inaccuracies" exist nor has he described them or the like documents he claims should have been subpoenaed by counsel in detail.

7

Judge chose to do so. The Magistrate Judge found that Salyer's case "is not even remotely similar to *Yagar*." [Doc. 79 at 8]. Salyer's only objection to the Magistrate Judge's R&R is that it "fails to cite any authority in support of its claim." [Doc. 82 at 8]. Unfortunately for Salyer, there is ample authority for the Magistrate Judge's finding. *Yagar* was a case pending on appeal when the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005), which extended the holding in *Blakely v. Washington*, 542 U.S. 296 (2004), to the Federal Sentencing Guidelines. On that basis the Sixth Circuit vacated Yagar's sentence and remanded for resentencing.

Because the case involved a *Booker* remand, the Sixth Circuit also considered Yagar's appeal of the district court's application of a two-level enhancement under § 2B1.1(b)(2)(A) based on its finding that the offense involved more than 10, but less than 50, victims. The Sixth Circuit found that the resolution of the issue turned on the "scope" of the word "victim" as used in the guidelines. Applying that definition, the Sixth Circuit found that a group of "account holders who temporarily lost funds . . . because their banks reimbursed them for their losses" were not victims since they "suffered no adverse effect as a practical matter from Yagar's conduct." 404 F.3d at 971. But even if petitioner could show that his "victims" were fully reimbursed by MetLife, which he has not done, *Yagar* provides him no relief.

First of all, petitioner has not provided any documents or other allegations of fact, as opposed to his conclusory allegations, that all victims were in fact fully reimbursed by MetLife. Secondly, even if the Court assumes that the victims were repaid, Salyer offered no allegation, either factual or conclusory, to indicate ***when*** the repayments were made. This is important because *Yagar* dealt with potential victims who had "only temporarily lost funds," and the court acknowledged that there "may be situations in which a person could be considered a 'victim'

8

under the Guidelines even though he or she is *ultimately* reimbursed." 404 F.3d at 971 (emphasis added). Salyer has not shown that any victims' losses were "short-lived and immediately covered by a third-party." *Id*. Indeed, the stipulated facts established that "from 2005 to late 2007, Salyer knowingly and inappropriately diverted over $6,000,000 from IRA and brokerage accounts owned by MetLife Securities clients." [PSR at ¶ 9]. The PSR identified six individuals not included in the indictment or plea agreement whose losses totaling $394,328.87 were reimbursed in that amount by MetLife" in 2008 and 2009. [*Id*. at ¶ 21]. *Yagar* simply does not apply to this situation and counsel was not ineffective. This claim lacks merit.

IV. **Ineffective Assistance of Counsel—Four-Level Increase For Violation of Securities Laws**

Petitioner agreed in his plea agreement "that the offense involved a violation of securities law (§ 2B1.1(b)(17)(A)." As a result the PSR as signed a four-level enhancement to the offense level for an offense involving a violation of the securities law. USSG § 2B1.1(b)(18)(A) (2011).[6] Petitioner claims counsel was deficient in failing to object to the enhancement because it was "supported only by the allegation that Salyer conducted business outside the scope of his employment with MetLife" and petitioner advised counsel "that he had filed the requisite SEC forms with the employer prior to and during any activity conducted outside MetLife." [Doc. 82 at 9]. The Magistrate Judge briefly addressed the claim even though petitioner's sworn testimony at the change of plea hearing is dispositive of the claim. The Magistrate Judge found that "[b]y forging his clients' names on MetLife forms to effect transfers of their funds," and sending them false reports regarding their investments, Salyer violated 15 U.S.C. § 77q(a) and 10(b), 15 U.S.C. § 78(j)(b), and Rule 106-5, 17 CFR § 240.106-5." [Doc. 79 at 8-9].

---

[6] The 2011 version of the United States Sentencing Commission Guidelines Manual was used in petitioner's PSR. The section of the guidelines manual referred to in the plea agreement was renumbered in the 2011 manual.

9

Salyer's objection is nothing more than a restatement of his two-sentence conclusory allegation stated above. He makes absolutely no effort to show that the Magistrate Judge's ruling is in anyway erroneous or contrary to law. Furthermore, not only did Salyer's actions violate the securities laws, he was sued in 2008 by the Securities and Exchange Commission for disgorgement and permanent injunction for conduct violating the very statutes referred to by the Magistrate Judge. *See Securities and Exchange Commission v. Mark E. Salyer*, No. 2:08-CV-179. In that civil case, concluded long before the indictment was filed in this criminal case, Salyer consented to the entry of a judgment, without admitting or denying the allegations of the complaint. Although Salyer did not specifically admit the SEC's allegations, he did, for purposes of the SEC's motion to set disgorgement and prejudgment interest, and impose a civil penalty, agree that the allegations of the complaint would be accepted as and deemed true by the Court and that he would be precluded from arguing that he did not violate the securities' laws. [No. 2:08-CV-179, Doc. 25 at 3]. Subsequently, the SEC's motion was granted and Salyer was ordered to pay a disgorgement amount of $5,727,757 plus prejudgment interest and a civil penalty of $130,000. [*Id*. at 10]. Petitioner cannot now reasonably complain, especially in light of his agreement in his plea agreement, that it was not established by a preponderance of the evidence that he violated the securities laws. This objection is without merit and OVERRULED.

## V. Conclusion

For the reasons set forth herein, petitioner's objections, [Doc. 82], are OVERRULED and the Report and Recommendation of the United States Magistrate Judge, [Doc. 79], is ADOPTED and AFFIRMED and made the ORDER of this Court. Petitioner's motion, [Doc. 60], is DENIED and DISMISSED WITH PREJUDICE. Petitioner's motion for discovery, [Doc. 70], is likewise DENIED. A separate judgment will enter.

## VI. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001). The District Court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that petitioner's claims are adequate to deserve further review. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

SO ORDERED:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE